**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| ACRISURE OF CALIFORNIA, LLC, | Case No. 1:26-cv-01213 |
| Plaintiff, | Hon. |
| v. | |
| HAKOP ("JACK") PAPAZYAN, | |
| Defendant. | |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff Acrisure of California, LLC ("Acrisure"), by and through its attorneys Skadden, Arps, Slate, Meagher & Flom LLP and Warner Norcross + Judd LLP, states its Complaint for Injunctive and Declaratory Relief against Defendant Hakop "Jack" Papazyan ("Papazyan"), upon personal knowledge with respect to itself and its own acts, and upon information and belief as to all other matters, as follows:

## NATURE OF ACTION

1. On April 9, 2026, Acrisure's then-employee Jack Papazyan resigned from Acrisure to join one of Acrisure's direct competitors. Papazyan was a highly compensated professional who sold his business, Gain Insurance Agency ("GIA"), including all of the goodwill and substantially all of its assets, to Acrisure for millions of dollars and thereafter worked as an employee of Acrisure. The same day and the day after Papazyan's resignation, several individuals who worked on Papazyan's Acrisure team also resigned to join Acrisure's direct competitor.

2.        Papazyan has violated his contractual obligations to Acrisure.  Through this action seeking injunctive relief and declaratory judgment, Acrisure seeks to enforce its rights pursuant to the asset purchase agreement entered into between Papazyan and Acrisure, effective August 1, 2020 (the "Asset Purchase Agreement"), under which Acrisure purchased the assets of GIA, and the employment agreement entered into between Papazyan and Acrisure, effective August 1, 2020 (the "Employment Agreement") that was agreed to as a condition to Acrisure's purchase of Papazyan's business.  Papazyan's employment with a direct competitor violates the non-competition provision of the Asset Purchase Agreement and the Employment Agreement.  Upon information and belief, Papazyan has also violated the non-solicitation provision of the Asset Purchase Agreement and the Employment Agreement in connection with the hiring of several individuals at Acrisure's direct competitor and his intention to recruit additional former and current Acrisure employees.  Upon information and belief, Papazyan has violated or will violate the customer non-solicitation provision of the Asset Purchase Agreement and the Employment Agreement through the solicitation of customers to persuade them to move their business to Acrisure's direct competitor.

3.        Through this injunctive relief action, Acrisure seeks to protect its rights and to enjoin Papazyan from violating the reasonable restrictive covenants agreed upon in the Asset Purchase Agreement and the Employment Agreement.

4.        Acrisure has suffered, and will continue to suffer, irreparable harm as a result of Papazyan's unlawful conduct.

**PARTIES**

5.        Acrisure of California, LLC is a limited liability company with its principal place of business at 100 Ottawa Avenue SW, Grand Rapids, Michigan.  Acrisure of California, LLC is a Michigan limited liability company and its sole member is Acrisure, LLC.  Acrisure, LLC is a

Michigan limited liability company and its sole member is Acrisure Intermediate, Inc. Acrisure Intermediate, Inc. is a Delaware corporation with its principal place of business in Michigan. Acrisure of California, LLC is a citizen of Delaware and Michigan.

6. Defendant Hakop "Jack" Papazyan is an individual who upon information and belief is a citizen of California. Papazyan was a Client Advisor at Acrisure until he resigned on April 9, 2026 to join a competitor of Acrisure.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Papazyan is a citizen of California. Acrisure is a citizen of Michigan and Delaware.

8. This Court has personal jurisdiction over Papazyan because Papazyan consented to personal jurisdiction in this Court in Section 17(d) of the Employment Agreement. (Employment Agreement § 17(d)). In addition, Papazyan's intentional acts at issue in this Complaint were intentionally aimed at Michigan and caused injury to Acrisure in Michigan. Papazyan has sufficient minimum contacts with Michigan and otherwise purposefully availed himself of the benefits in this State in conducting his business, thereby rendering the exercise of jurisdiction by Michigan courts permissible under traditional notions of fair play and substantial justice.

9. Venue in this district is proper pursuant to 28 U.S.C. § 1391. Venue in this district is also proper because Papazyan agreed in Section 17(d) of the Employment Agreement that any action arising from or related to the Employment Agreement seeking injunctive or equitable relief would be brought exclusively in either a state court located in Kent County, Michigan or a federal district court in the Western District of Michigan.

10.     In Section 7.14 of the Asset Purchase Agreement, Papazyan agreed that the Asset Purchase Agreement "shall be governed, construed, interpreted, and enforced in accordance with the domestic laws of the State of Michigan, without giving effect to any choice or law or conflict of law provision or rule (whether of the State of Michigan or any other jurisdiction) that would cause the application of the laws of any other jurisdiction other than the State of Michigan."

11.     In Section 17(d) of the Employment Agreement, Papazyan agreed that the Employment Agreement "shall be governed, construed, interpreted, and enforced in accordance with the domestic laws of the State of Michigan, without giving effect to any choice or law or conflict of law provision or rule (whether of the State of Michigan or any other jurisdiction) that would cause the application of the laws of any other jurisdiction other than the State of Michigan."  Papazyan further agreed that "[a]ll actions or proceedings arising from or related to this Agreement and for which a party seeks injunctive or equitable relief shall be brought only in a state court of competent subject matter jurisdiction in Kent County, Michigan, or in the federal courts of competent subject matter jurisdiction in the Western District of Michigan, Southern Division.  Each party expressly and irrevocably consents to personal jurisdiction and venue in such courts, and agrees not to object to such jurisdiction or venue on the ground of forum non conveniens or otherwise."

## FACTUAL BACKGROUND

### Acrisure Is A Global Fintech Leader
### Providing Financial Services In The Insurance Brokerage Industry

12.     Acrisure is a global fintech leader based in Grand Rapids, Michigan, that provides intelligence-driven financial services solutions across many industries, including the insurance brokerage industry.  Acrisure has offices throughout the United States.

13. The insurance brokerage industry is highly competitive to soliciting and maintaining customers, accounts, and employees.

14. Acrisure spends significant time and money developing an experienced and leading team of insurance brokerage professionals who help Acrisure's customers to address their unique needs and further their business relationship with Acrisure.

15. Acrisure makes significant investments to acquire, build, and retain its customer base and customer relationships, its goodwill, business reputation and brand, and its employee workforce.

16. Acrisure invests in innovative technology, training of its workforce, strong referral networks, and business contacts that are critical to developing and retaining its insurance customer relationships.

17. Acrisure protects its business relationships by obtaining from employees who have particularly important roles agreements with reasonable restrictions in the form of non-competition and non-solicitation provisions, among others.

**In 2020, Acrisure Purchased An Insurance Brokerage
Owned In Part By Papazyan And Simultaneously Papazyan
<u>Entered Into An Employment Agreement As A Condition To The Deal</u>**

18. In 2020, Papazyan and the co-owner of the insurance agency GIA, sold all of the business, assets, and goodwill owned by GIA to Acrisure for millions of dollars.

19. As part of Acrisure's purchase of GIA, in August 2020, the parties to that transaction entered into the Asset Purchase Agreement.

20. Papazyan's execution of the Employment Agreement was a condition to the closing of Acrisure's purchase of GIA and an inducement to Acrisure consummating the transaction.

21. The Employment Agreement was an exhibit to the transaction closing documents.

22.     The Asset Purchase Agreement and Employment Agreement were negotiated by legal counsel for the parties, including legal counsel for Papazyan from the law firm Knapp, Petersen & Clark, PC.

23.     In the Employment Agreement, Papazyan acknowledged that Acrisure and Papazyan had "mutually prepared this Agreement through the process of negotiation and the involvement, to the extent desired, of independent counsel."  (Employment Agreement  § 17(h).)

24.     As a condition of closing on the purchase of GIA, Papazyan agreed to a number of restrictive covenants in the Asset Purchase Agreement itself and in additional agreements that were executed as a condition of closing, including the Employment Agreement.

25.     The Employment Agreement expressly references the Asset Purchase Agreement.

26.     Papazyan's agreement to the covenants contained in Section 13(b) of the Employment Agreement was a condition to closing under the Asset Purchase Agreement.

27.     Section 13 of the Employment Agreement contains a covenant of confidentiality.

28.     Section 13 of the Employment Agreement contains covenants of non-competition, defined below as the Non-Competition Covenant.

29.     Section 13 of the Employment Agreement contains covenants of non-solicitation, defined below as Business Non-Solicitation Covenants and the Employee Non-Solicitation Covenant.

30.     Pursuant to Section 13(b) of the Employment Agreement, Papazyan acknowledged that he agreed to the Non-Competition Covenants, Business Non-Solicitation Covenants, and Employee Non-Solicitation Covenant "[i]n consideration of, and as a condition and inducement to Employer's purchase of the assets of GIA."  (Employment Agreement § 13(b).)

6

31.     Papazyan also agreed to certain restrictive covenants in the Asset Purchase Agreement.

32.     Section 5.1 of the Asset Purchase Agreement contains a covenant of confidentiality.

33.     Section 5.1 of the Asset Purchase Agreement contains a covenant of non-competition, defined below as the Asset Purchase Agreement Non-Competition Covenant.

34.     Section 5.1 of the Asset Purchase Agreement contains covenants of non-solicitation, defined below as the Asset Purchase Agreement Non-Solicitation Covenants and the Asset Purchase Agreement Employee Non-Solicitation Covenants.

35.     Pursuant to Section 5.1(b) of the Asset Purchase Agreement, Papazyan acknowledged that he agreed to the Asset Purchase Agreement Non-Competition Covenants, Asset Purchase Agreement Non-Solicitation Covenants and the Asset Purchase Agreement Employee Non-Solicitation Covenants "[i]n consideration of the benefits received by [GIA] and [Papazyan] under the [Asset Purchase Agreement]."  (Asset Purchase Agreement § 5.1(b).)

**Papazyan Agreed To Reasonable Restrictive Covenants In The Employment Agreement**

36.     At Acrisure, Papazyan was responsible for, among other things, managing, soliciting, and selling customers various insurance products and services, providing related services to and developing goodwill with customers.  Papazyan had access to, and made use of, Acrisure's proprietary and confidential information.

37.     Papazyan was highly compensated by Acrisure, receiving annual compensation in the six figures at the time of his departure.  In Section 8(a)(i) of the Employment Agreement, Papazyan agreed to provide "at least forty-five (45) days' prior written notice" in order to terminate his employment.  (Employment Agreement § 8(a)(i)) (the "Notice Provision").

38. Acrisure hired and highly compensated Papazyan in exchange for, among other things, Papazyan's agreement to reasonable restrictive covenants in the Employment Agreement.

39. Papazyan agreed in the Employment Agreement to a non-competition covenant. Specifically, Papazyan agreed:

> (a) in Section 13(b)(i) of the Employment Agreement that for the three-consecutive-year period after his termination, Papazyan would not, directly or indirectly, engage in any capacity that is the same, similar, or in any way related to the capacity in which such he was employed by Acrisure, either alone or as a shareholder (other than as a holder of less than five percent (5%) of the common stock of any publicly traded corporation), any other business organization that, at any time, conducts business relating to insurance brokerages or other related business conducted by Acrisure or its affiliates ("Competitive Activity").

(Employment Agreement § 13(b)(i) (the "Non-Competition Covenant").)

40. Papazyan agreed in the Employment Agreement to customer non-solicitation covenants. Specifically, Papazyan agreed:

> (a) in Section 13(b)(iii) of the Employment Agreement that for the three-consecutive-year period after his termination, Papazyan would not, directly or indirectly, other than on behalf of Acrisure or its affiliates, solicit business of the type performed by Acrisure or its affiliates from any person or company that is Acrisure's or its affiliates' customer at the time of such solicitation, or who was a customer of Acrisure or its affiliates during the one-year period preceding the solicitation.

(b)    in Section 13(b)(iv) of the Employment Agreement that for the three-consecutive-year period after his termination, Papazyan would not, directly or indirectly, persuade any person or company that is Acrisure's or its affiliates' customer at the time of such persuasion, or that was Acrisure's or its affiliates' customer during the one-year period preceding the persuasion, to cease doing business with or to reduce the amount of business done with Acrisure or its affiliates.

(c)    in Section 13(b)(v) of the Employment Agreement that for the three-consecutive-year period after his termination, Papazyan would not, directly or indirectly, persuade any insurance company or other supplier of Acrisure or its affiliates to cease doing business with or to reduce the amount of business done with Acrisure or its affiliates.

(*Id.* § 13(b)(iii)-(v) (the "Business Non-Solicitation Covenants").)

41.    Papazyan agreed in the Employment Agreement to an employee non-solicitation covenant.  Specifically, in Section 13(b)(ii) of the Employment Agreement, Papazyan agreed that for the three-consecutive-year period after his termination, Papazyan would not, directly, or indirectly, employ, or assist any other person or company in employing, any person who is then employed by Acrisure or its affiliates or was employed by Acrisure or its affiliates during the one-year period preceding the employment or assistance.  (*Id.* § 13(b)(ii) (the "Employee Non-Solicitation Covenant").)

42.    The Non-Competition Covenant is subject to reasonable territorial restrictions as defined in the Employment Agreement.  (*Id.* § 13(b).)

9

43.     The Business Non-Solicitation Covenants are subject to reasonable territorial restrictions as defined in the Employment Agreement.  (*Id.*)

44.     The Employee Non-Solicitation Covenant is subject to reasonable territorial restrictions as defined in the Employment Agreement.  (*Id.*)

45.     In Section 14(a) of the Employment Agreement, Papazyan agreed that the "duration, activities restricted by and geographic scope of the Restrictive Covenants" in Section 13—including the Non-Competition Covenant, Business Non-Solicitation Covenants, and Employee Non-Solicitation Covenant—"are reasonable and are necessary to protect the business and goodwill" of Acrisure.  (*Id.* § 13(a).)

46.     In Section 14(d) of the Employment Agreement, Papazyan agreed that if he violates any restrictive covenant in Section 13—including the Non-Competition Covenant, Business Non-Solicitation Covenants, and Employee Non-Solicitation Covenant—then the period applicable to each obligation he violated automatically will be extended by a period of time equal in length to the period during which the violation occurred.  (*Id.* § 14(d).)

47.     The restrictive covenants in Section 13 of the Employment Agreement are reasonable in scope to protect Acrisure's legitimate business interests (including its proprietary and confidential information and relationships with customers), are not harmful to the general public, and are not unreasonably burdensome to Papazyan.  Indeed, pursuant to the Employment Agreement, Papazyan agreed that those restrictive covenants are reasonable.  (*Id.* § 14(a).)

48.     The restrictive covenants in Section 13 of the Employment Agreement apply to the benefit of Acrisure and Acrisure's affiliates.  (*Id.* § 13(d).)

49.     Papazyan agreed that his breach of the restrictive covenants in Section 13 of the Employment Agreement "will cause irreparable harm."  (*Id.* § 14(a).)

10

**Papazyan Agreed To Reasonable Restrictive Covenants In The Asset Purchase Agreement**

50.    Papazyan sold GIA to Acrisure for millions of dollars, in exchange for, among other things, Papazyan's agreement to reasonable restrictive covenants in the Asset Purchase Agreement.

51.    Papazyan agreed in the Asset Purchase Agreement to a non-competition covenant. Specifically, Papazyan agreed:

(a)    in Section 5.1(b)(i) of the Asset Purchase Agreement that during the Restricted Period (defined below), Papazyan would not, directly or indirectly, engage in any Competitive Activity.

(Asset Purchase Agreement § 5.1(b)(i) (the "Asset Purchase Agreement Non-Competition Covenant").)

52.    Papazyan agreed in the Asset Purchase Agreement to customer non-solicitation covenants.  Specifically, Papazyan agreed:

(a)    in Section 5.1(b)(iii) of the Asset Purchase Agreement that during the Restricted Period, Papazyan would not, directly or indirectly, other than on behalf of Acrisure or its affiliates, solicit business of the type performed by Acrisure or its affiliates from any person or company that is Acrisure's or its affiliates' customer at the time of such solicitation, or who was a customer of Acrisure or its affiliates during the one-year period preceding the solicitation.

(b)    in Section 5.1(b)(iv) of the Asset Purchase Agreement that during the Restricted Period, Papazyan would not, directly or indirectly, persuade any person or company that is Acrisure's or its affiliates' customer at the time of such persuasion, or that was Acrisure's or its affiliates' customer during

11

the one-year period preceding the persuasion, to cease doing business with or to reduce the amount of business done with Acrisure or its affiliates.

(c)     in Section 5.1(b)(v) of the Asset Purchase Agreement that during the Restricted Period, Papazyan would not, directly or indirectly, persuade any insurance company or other supplier of Acrisure or its affiliates to cease doing business with or to reduce the amount of business done with Acrisure or its affiliates.

(*Id.* § 5.1(b)(iii)-(v) (the "Asset Purchase Agreement Business Non-Solicitation Covenants").)

53.     Papazyan agreed in the Asset Purchase Agreement to an employee non-solicitation covenant. Specifically, in Section 5.1(b)(ii) of the Employment Agreement, Papazyan agreed that during the Restricted Period, Papazyan would not, directly, or indirectly, employ, or assist any other person or company in employing, any person who is then employed by Acrisure or its affiliates or was employed by Acrisure or its affiliates during the one-year period preceding the employment or assistance. (*Id.* § 5.1(b)(ii) (the "Asset Purchase Agreement Employee Non-Solicitation Covenant").)

54.     The Restricted Period is defined in the Asset Purchase Agreement as the longer of (i) the five-year period immediately following the effective date of the Asset Purchase Agreement, August 1, 2020, and (ii) the one-year period immediately following the date on which Papazyan and his affiliates cease to hold any equity securities of Acrisure Holdings, Inc. ("Acrisure Holdings"). (*Id.* § 5.1(b).)

55.     Papazyan currently holds equity securities of Acrisure Holdings.

56.     The Asset Purchase Agreement Non-Competition Covenant is subject to reasonable territorial restrictions as defined in the Asset Purchase Agreement. (*Id.*)

12

57.     The Asset Purchase Agreement Business Non-Solicitation Covenants are subject to reasonable territorial restrictions as defined in the Asset Purchase Agreement.  (*Id.*)

58.     The Asset Purchase Agreement Employee Non-Solicitation Covenant is subject to reasonable territorial restrictions as defined in the Asset Purchase Agreement.  (*Id.*)

59.     In Section 5.1(c)(iv) of the Asset Purchase Agreement, Papazyan agreed that if he violates any restrictive covenant in Section 5.1—including the Asset Purchase Agreement Non-Competition Covenant, the Asset Purchase Agreement Business Non-Solicitation Covenants, and the Asset Purchase Agreement Employee Non-Solicitation Covenant—then the period applicable to each obligation he violated automatically will be extended by a period of time equal in length to the period during which the violation occurred.  (*Id.* § 5.1(c)(iv).)

60.     The restrictive covenants in Section 5.1(c)(i) of the Asset Purchase Agreement are reasonable in scope to protect Acrisure's legitimate business interests (including its proprietary and confidential information and relationships with customers), are not harmful to the general public, and are not unreasonably burdensome to Papazyan.  Indeed, pursuant to the Asset Purchase Agreement, Papazyan agreed that those restrictive covenants are reasonable.  (*Id.* § 5.1(c)(i).)

61.     The restrictive covenants in Section 5.1 of the Asset Purchase Agreement apply to the benefit of Acrisure and Acrisure's affiliates. (*Id.* § 5.1.)

62.     Papazyan agreed that his breach of the restrictive covenants in Section 5 of the Asset Purchase Agreement "will cause irreparable harm." (*Id.* § 5.1.)

**On April 9, 2026, Papazyan Resigned From Acrisure And Joined A Direct Competitor**

63.     On April 9, 2026, Papazyan informed Acrisure that he was resigning from Acrisure.

13

64. Upon information and belief, Papazyan accepted employment or otherwise became affiliated with a direct competitor of Acrisure or one of its affiliates.

65. Upon information and belief, as of April 13, 2026, Papazyan is employed by or otherwise affiliated with the competitor or one of its affiliates.

66. Papazyan did not provide Acrisure with written notice of termination of his employment at Acrisure at least 45 days before his resignation and joining a direct competitor of Acrisure's. Papazyan violated the Notice Provision in his Employment Agreement.

67. Upon information and belief, Papazyan is now working from his home in La Canada Flintridge, CA or at another location that is within the geographic restrictions of the Non-Competition Covenant, Business Non-Solicitation Covenants, Employee Non-Solicitation Covenant, the Asset Purchase Agreement Non-Competition Covenant, the Asset Purchase Agreement Business Non-Solicitation Covenants, and the Asset Purchase Agreement Employee Non-Solicitation Covenant.

68. Upon information and belief, Papazyan's new role is substantially the same as the role Papazyan held when he worked at Acrisure.

69. Upon information and belief, Papazyan intends to immediately compete against Acrisure.

70. The competitor is an insurance brokerage firm.

71. The products and services of the competitor are competitive to the products and services of Acrisure.

72. Upon information and belief, Papazyan solicited Acrisure employees to join him at the competitor.

14

73.     Upon information and belief, Papazyan assisted the competitor in hiring Acrisure employees.

**Papazyan Agreed That The Employment Agreement
And The Asset Purchase Agreement Would Be Governed By Michigan Law**

74.     In Section 17(d) of the Employment Agreement, Papazyan agreed that:

> The terms and conditions of this Agreement shall be governed, construed, interpreted and enforced in accordance with the domestic laws of the **State of Michigan**, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Michigan or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Michigan.

(Employment Agreement § 17(d) (emphasis added).)

75.     In Section 7.14 of the Asset Purchase Agreement, Papazyan agreed that:

> The terms and conditions of this Agreement shall be governed, construed, interpreted and enforced in accordance with the domestic laws of the **State of Michigan**, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Michigan or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Michigan.

(Asset Purchase Agreement § 7.14 (emphasis added).)

**Papazyan Agreed That Acrisure Is Entitled To
Obtain Injunctive Relief If He Breached The Restrictive Covenants
In The Employment Agreement and the Asset Purchase Agreement**

76.     Pursuant to Section 14(b) of the Employment Agreement, Papazyan agreed that Acrisure "shall be entitled to legal and equitable relief in court" if Papazyan "breaches any Restrictive Covenant" in Section 13 of the Employment Agreement.  (Employment Agreement § 14(b).)  Papazyan further agreed that Acrisure "shall be entitled to seek court action . . . to specifically enforce the terms of the Restrictive Covenants, and to obtain a temporary or permanent injunction in an action in equity without the necessity of proving actual damages."  (*Id.*)  This includes the right "to seek and obtain an exparte restraining order immediately upon

15

the commencement of any such action. Such temporary injunction shall remain in effect, pending a hearing where [Papazyan] must show cause as to why such injunction should be lifted."  (*Id.*)

77.     In Section 14(a) of the Employment Agreement, Papazyan agreed that a breach of the restrictive covenants contained in Section 13 of the Employment Agreement would "cause irreparable harm to" Acrisure.  (*Id.* § 14(a).)

78.     Pursuant to Section 5.1(c)(ii) of the Asset Purchase Agreement, Papazyan agreed that Acrisure "shall be entitled to legal and equitable relief in court" if Papazyan "breaches any Restrictive Covenant" in Section 5 of the Asset Purchase Agreement.  (Asset Purchase Agreement § 5.1(c)(ii).)  Papazyan further agreed that Acrisure "shall be entitled to seek court action . . . to specifically enforce the terms of the Restrictive Covenants, and to obtain a temporary or permanent injunction in an action in equity without the necessity of proving actual damages."  (*Id.*)  This includes the right "to seek and obtain an exparte restraining order immediately upon the commencement of any such action. Such temporary injunction shall remain in effect, pending a hearing where [Papazyan] must show cause as to why such injunction should be lifted."  (*Id.*)

79.     In Section 5.1 of the Asset Purchase Agreement, Papazyan agreed that a breach of the restrictive covenants contained in Section 5.1 of the Asset Purchase Agreement would "cause irreparable harm to" Acrisure.

80.     Unless enjoined, Papazyan will continue to violate his contractual obligations to Acrisure.

81.     Papazyan's wrongful conduct is causing immediate, irreparable harm to Acrisure.

16

**Papazyan Agreed That All Disputes Related To**
**The Employment Agreement Would Be Resolved Only In Michigan**

82.    In Section 17(d) of the Employment Agreement, Papazyan agreed that all actions arising from or related to the Employment Agreement for which a party seeks injunctive relief shall be brought only in a Michigan court:

> All actions or proceedings arising from or related to this Agreement and **for which a party seeks injunctive** or equitable relief shall be brought **only** in a state court of competent subject matter jurisdiction in Kent County, Michigan, **or in the federal courts of competent subject matter jurisdiction in the Western District of Michigan, Southern Division**.  Each party expressly and irrevocably consents to personal jurisdiction and venue in such courts, and agrees not to object to such jurisdiction or venue on the ground *of forum non conveniens* or otherwise.

(*Id.* § 17(d) (emphasis added).)

83.    In Section 17(d) of the Employment Agreement, Papazyan agreed that he "expressly and irrevocably consents to personal jurisdiction and venue in such [Michigan] courts, and agrees not to object to such jurisdiction or venue on the ground *of forum non conveniens* or otherwise."  (*Id.* § 17(d).)

## COUNT I
### (Breach of Employment Agreement — Injunctive Relief: Non-Competition Covenant)

84.    Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein.

85.    The Employment Agreement constitutes a valid, enforceable, and binding contract between Acrisure and Papazyan.

86.    The Employment Agreement was made for valid consideration.

87.    Acrisure fully performed its obligations under the Employment Agreement.

17

88.    Under the Employment Agreement, Papazyan agreed to abide by the Non-Competition Covenant during his employment and for three years following his termination from Acrisure.

89.    The Employment Agreement is reasonable and necessary to protect Acrisure's proprietary and confidential information, relationships with its customers, and other reasonable competitive business interests and Acrisure property.

90.    Papazyan breached his obligations under the Employment Agreement by accepting an offer of employment from or otherwise becoming affilaited with a competitor of Acrisure within the time period and geographic restrictions of the Non-Competition Covenant.

91.    Papazyan's breach has and will directly and proximately cause Acrisure irreparable damage and injury, including to its competitive place in the insurance and risk management market and to its relationships with its customers, unless restrained and enjoined by this Court.  There is immediate and imminent danger that Acrisure will continue to suffer irreparable injury for which there is no adequate remedy at law.

## COUNT II
**(Breach of Employment Agreement — Injunctive Relief:
Business Non-Solicitation Covenants)**

92.    Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein.

93.    The Employment Agreement constitutes a valid, enforceable, and binding contract between Acrisure and Papazyan.

94.    The Employment Agreement was made for valid consideration.

95.    Acrisure fully performed its obligations under the Employment Agreement.

18

96. Under the Employment Agreement, Papazyan agreed to abide by the Business Non-Solicitation Covenants during his employment and for three years following his termination from Acrisure.

97. The Employment Agreement is reasonable and necessary to protect Acrisure's proprietary and confidential information, relationships with its customers, and other reasonable competitive business interests and Acrisure property.

98. Upon information and belief, Papazyan intends to breach his obligations under the Employment Agreement by soliciting Acrisure customers to move their business to Acrisure's direct competitor within the time period and geographic restrictions of the Business Non-Solicitation Covenants.

99. Papazyan's breach will directly and proximately cause Acrisure irreparable damage and injury, including to its competitive place in the insurance and risk management market and to its relationships with its customers, unless restrained and enjoined by this Court. There is immediate and imminent danger that Acrisure will continue to suffer irreparable injury for which there is no adequate remedy at law.

**COUNT III**
**(Breach of Employment Agreement — Injunctive Relief:**
**Employee Non-Solicitation Covenant)**

100. Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein.

101. The Employment Agreement constitutes a valid, enforceable, and binding contract between Acrisure and Papazyan.

102. The Employment Agreement was made for valid consideration.

103. Acrisure fully performed its obligations under the Employment Agreement.

19

104.    Under the Employment Agreement, Papazyan agreed to abide by the Employee Non-Solicitation Covenant during his employment and for three years following his termination from Acrisure.

105.    The Employment Agreement is reasonable and necessary to protect Acrisure's proprietary and confidential information, relationships with its customers, and other reasonable competitive business interests and Acrisure property.

106.    Upon information and belief, Papazyan breached his obligations under the Employment Agreement by employing or assisting Acrisure's competitor in employing Acrisure employees.

107.    Upon information and belief, Papazyan intends to breach his obligations under the Employment Agreement by soliciting additional Acrisure employees to join Acrisure's competitor or otherwise assisting Acrisure's competitor in hiring additional Acrisure employees within the time period and geographic restrictions of the Business Non-Solicitation Covenants.

108.    Papazyan's breach has and will directly and proximately cause Acrisure irreparable damage and injury unless restrained and enjoined by this Court.  There is immediate and imminent danger that Acrisure will continue to suffer irreparable injury for which there is no adequate remedy at law.

**COUNT IV**
**(Breach of Asset Purchase Agreement — Injunctive Relief:**
**The Asset Purchase Agreement Non-Competition Covenant)**

109.    Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein.

110.    The Asset Purchase Agreement constitutes a valid, enforceable, and binding contract between Acrisure and Papazyan.

111.     The Asset Purchase Agreement was made for valid consideration.

20

112.    Acrisure fully performed its obligations under the Asset Purchase Agreement.

113.    Under the Asset Purchase Agreement, Papazyan agreed to abide by the Asset Purchase Agreement Non-Competition Covenant during the Restricted Period.

114.    The Asset Purchase Agreement is reasonable and necessary to protect Acrisure's proprietary and confidential information, relationships with its customers, and other reasonable competitive business interests and Acrisure property.

115.    Papazyan breached his obligations under the Asset Purchase Agreement by accepting an offer of employment from or otherwise becoming affiliated with a competitor of Acrisure within the Restricted Period and geographic restrictions of the Asset Purchase Agreement Non-Competition Covenant.

116.    Papazyan's breach has and will directly and proximately cause Acrisure irreparable damage and injury, including to its competitive place in the insurance and risk management market and to its relationships with its customers, unless restrained and enjoined by this Court.  There is immediate and imminent danger that Acrisure will continue to suffer irreparable injury for which there is no adequate remedy at law.

### COUNT V
**(Breach of Asset Purchase Agreement — Injunctive Relief:
The Asset Purchase Agreement Business Non-Solicitation Covenants)**

117.    Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein.

118.    The Asset Purchase Agreement constitutes a valid, enforceable, and binding contract between Acrisure and Papazyan.

119.    The Asset Purchase Agreement was made for valid consideration.

120.    Acrisure fully performed its obligations under the Asset Purchase Agreement.

21

121. Under the Asset Purchase Agreement, Papazyan agreed to abide by the Asset Purchase Agreement Business Non-Solicitation Covenants during the Restricted Period.

122. The Asset Purchase Agreement is reasonable and necessary to protect Acrisure's proprietary and confidential information, relationships with its customers, and other reasonable competitive business interests and Acrisure property.

123. Upon information and belief, Papazyan intends to breach his obligations under the Asset Purchase Agreement by soliciting Acrisure customers to move their business to Acrisure's direct competitor within the time period and geographic restrictions of the Asset Purchase Agreement Business Non-Solicitation Covenants.

124. Papazyan's breach will directly and proximately cause Acrisure irreparable damage and injury, including to its competitive place in the insurance and risk management market and to its relationships with its customers, unless restrained and enjoined by this Court. There is immediate and imminent danger that Acrisure will continue to suffer irreparable injury for which there is no adequate remedy at law.

### COUNT VI
**(Breach of Asset Purchase Agreement — Injunctive Relief:
The Asset Purchase Agreement Employee Non-Solicitation Covenant)**

125. Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein.

126. The Asset Purchase Agreement constitutes a valid, enforceable, and binding contract between Acrisure and Papazyan.

127. The Asset Purchase Agreement was made for valid consideration.

128. Acrisure fully performed its obligations under the Asset Purchase Agreement.

129. Under the Asset Purchase Agreement, Papazyan agreed to abide by the Asset Purchase Agreement Employee Non-Solicitation Covenant during the Restricted Period.

22

130.    The Asset Purchase Agreement is reasonable and necessary to protect Acrisure's proprietary and confidential information, relationships with its customers, and other reasonable competitive business interests and Acrisure property.

131.    Upon information and belief, Papazyan breached his obligations under the Asset Purchase Agreement by employing or assisting Acrisure's competitor in employing Acrisure employees.

132.    Upon information and belief, Papazyan intends to breach his obligations under the Asset Purchase Agreement by soliciting additional Acrisure employees to join Acrisure's competitor or otherwise assisting Acrisure's competitor in hiring additional Acrisure employees within the time period and geographic restrictions of the Asset Purchase Agreement Business Non-Solicitation Covenants.

133.    Papazyan's breach has and will directly and proximately cause Acrisure irreparable damage and injury unless restrained and enjoined by this Court.  There is immediate and imminent danger that Acrisure will continue to suffer irreparable injury for which there is no adequate remedy at law.

**COUNT VII**
**(Declaratory Judgment Pursuant to 28 U.S.C. §§ 2201, 2202: Employment Agreement)**

134.    Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein.

135.    An actual controversy has arisen and now exists between Acrisure and Papazyan concerning the parties' rights and obligations under the Employment Agreement.

136.    Acrisure requires a judicial determination of the respective rights of itself and Papazyan under the Employment Agreement.  Specifically, Acrisure seeks a declaration that, based on the plain language of the Employment Agreement:

23

(a) The Non-Competition Covenant, Business Non-Solicitation Covenants, and Employee Non-Solicitation Covenant in the Employment Agreement are valid and enforceable.

(b) Papazyan is obligated to fulfill his obligations under the Employment Agreement, including, but not limited to, abiding by the Non-Competition Covenant, Business Non-Solicitation Covenants, and Employee Non-Solicitation Covenant.

137. Such a declaration is necessary and appropriate at this time in order that Acrisure may ascertain its rights under the Employment Agreement, and will serve a useful purpose in clarifying the parties' legal relations and terminate the uncertainty giving rise to this proceeding.

## COUNT VII
**(Declaratory Judgment Pursuant to 28 U.S.C. §§ 2201, 2202: Asset Purchase Agreement)**

138. Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein.

139. An actual controversy has arises and now exists between Acrisure and Papazyan concerning the parties' rights and obligations under the Asset Purchase Agreement.

140. Acrisure requires a judicial determination of the respective rights of itself and Papazyan under the Asset Purchase Agreement.  Specifically, Acrisure seeks a declaration that, based on the plain language of the Asset Purchase Agreement:

(a) The Asset Purchase Agreement Non-Competition Covenant, the Asset Purchase Agreement, the Asset Purchase Agreement Business Non-Solicitation Covenants, and the Asset Purchase Agreement Employee Non-Solicitation Covenant in the Asset Purchase Agreement are valid and enforceable.

24

(b)    Papazyan is obligated to fulfill his obligations under the Asset Purchase Agreement, including, but not limited to, abiding by the Asset Purchase Agreement Non-Competition Covenant, the Asset Purchase Agreement Business Non-Solicitation Covenants, and the Asset Purchase Agreement Employee Non-Solicitation Covenant.

141.    Such a declaration is necessary and appropriate at this time in order that Acrisure may ascertain its rights under the Asset Purchase Agreement, and will serve a useful purpose in clarifying the parties' legal relations and terminate the uncertainty giving rise to this proceeding.

### INJUNCTIVE AND DECLARATORY RELIEF REQUESTED

WHEREFORE, Acrisure requests that this honorable Court enter the following relief:

A.    Enjoin Papazyan from violating the Non-Competition Covenant for three years from (i) the date of Papazyan's termination of his employment at Acrisure or (ii) the date of Papazyan's last breach of the Non-Competition Covenant, whichever is later.

B.    Enjoin Papazyan from violating the Business Non-Solicitation Covenants for three years from (i) the date of Papazyan's termination of his employment at Acrisure or (ii) the date of Papazyan's last breach of the Business Non-Solicitation Covenants, whichever is later.

C.    Enjoin Papazyan from violating the Employee Non-Solicitation Covenant for three years from (i) the date of Papazyan's termination of his employment at Acrisure or (ii) the date of Papazyan's last breach of the Employee Non-Solicitation Covenant, whichever is later.

D.    Enjoin Papazyan from violating the Asset Purchase Agreement Non-Competition Covenant for one year from (i) the date of Papazyan or his affiliates ceased to

25

hold any equity securities in Acrisure Holdings or (ii) the date of Papazyan's last breach of the Asset Purchase Agreement Non-Competition Covenant, whichever is later.

E.      Enjoin Papazyan from violating the Asset Purchase Agreement Business Non-Solicitation Covenants for one year from (i) the date of Papazyan or his affiliates ceased to hold any equity securities in Acrisure Holdings or (ii) the date of Papazyan's last breach of the Asset Purchase Agreement Business Non-Solicitation Covenants, whichever is later.

F.      Enjoin Papazyan from violating the Asset Purchase Agreement Employee Non-Solicitation Covenant for one year from (i) the date of Papazyan or his affiliates ceased to hold any equity securities in Acrisure Holdings or (ii) the date of Papazyan's last breach of the Asset Purchase Agreement Employee Non-Solicitation Covenant, whichever is later.

G.      Declare and decree that based on the plain language of the Employment Agreement:

    i.      The Non-Competition Covenants, Business Non-Solicitation Covenants, and Employee Non-Solicitation Covenant in the Employment Agreement are valid and enforceable.

    ii.      Papazyan is obligated to fulfill his obligations under the Employment Agreement, including, but not limited to, abiding by the Non-Competition Covenants, Business Non-Solicitation Covenants, and Employee Non-Solicitation Covenant.

iii.     The Asset Purchase Agreement Non-Competition Covenant, the Asset

Purchase Agreement, the Asset Purchase Agreement Business Non-

Solicitation Covenants, and the Asset Purchase Agreement Employee

Non-Solicitation Covenant in the Asset Purchase Agreement are valid and

enforceable.

iv.     Papazyan is obligated to fulfill his obligations under the Asset Purchase

Agreement, including, but not limited to, abiding by the Asset Purchase

Agreement Non-Competition Covenant, the Asset Purchase Agreement

Business Non-Solicitation Covenants, and the Asset Purchase Agreement

Employee Non-Solicitation Covenant.

H.     Grant Acrisure such other and further relief as the Court deems just and proper.

Dated:  April 14, 2026

SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP

By:  */s/ Christopher G. Clark*

Christopher G. Clark (663455-MA)
Catherine Fisher (686163-MA)
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
christopher.clark@skadden.com
catherine.fisher@skadden.com

- and -

WARNER NORCROSS + JUDD LLP
Edward J. Bardelli (P53849)
150 Ottawa Avenue, Suite 1500
Grand Rapids, Michigan 49503
(616) 752-2000
ebardelli@wnj.com

*Attorneys for Plaintiff*
*Acrisure of California, LLC*

28