**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ACRISURE OF CALIFORNIA, LLC,

          Plaintiff,

v.

HAKOP ("JACK") PAPAZYAN,

          Defendant.

Case No. 1:26-cv-01213-JMB-PJG

Hon. Jane M. Beckering

**<u>ORAL ARGUMENT REQUESTED</u>**

**PLAINTIFF ACRISURE OF**
**CALIFORNIA, LLC'S BRIEF IN OPPOSITION**
**<u>TO DEFENDANT HAKOP ("JACK") PAPAZYAN'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ..........................................................3

      A.     As Part Of The Sale Of His Insurance Business
           To Acrisure, Papazyan Agreed To The Covenants In The
           Asset Purchase Agreement In Exchange For Significant Consideration ...............3

      B.     As A Condition To The Sale Of His Business
           To Acrisure, Papazyan Agreed To The Covenants In
           His Employment Agreement In Exchange For Significant Compensation.............4

      C.     Papazyan Agreed That The Asset Purchase Agreement And
           Employment Agreement And Employment Agreement Are Governed
           By Michigan Law And That Disputes Would Be Resolved In Michigan...............5

      D.     After The Sale, Papazyan Was Employed As A Senior Acrisure Employee..........6

      E.     On April 9, 2026, Papazyan
           Resigned From Acrisure, Seemingly To Join A Direct Competitor......................6

      F.     Papazyan Filed An Improper Anticipatory California
           Action Seeking To Invalidate The Negotiated Restrictive Covenants
           And Circumvent This Court's Proper Jurisdiction Under The Agreements ..........7

      G.     Acrisure Brings Suit In The Contractually Agreed
           Michigan Forum To Protect Its Rights, And The Court Enters a TRO .................8

      H.     Papazyan Files Motions To
           Stay/Dismiss This Action And Dissolve The TRO ...............................................9

      I.     Acrisure Removes The California DJ Action To Federal Court ...........................9

      J.     The Court Denies Papazyan's Motion To Dissolve The TRO ..............................9

I.     PAPAZYAN'S *COLORADO RIVER*
     ARGUMENT IS MOOT; EVEN IF IT WERE NOT,
     ABSTENTION IS NOT APPROPRIATE HERE, AND
     THE COURT SHOULD NOT SURRENDER ITS JURISDICTION .............................10

      A.     *Colorado River* Is Inapplicable To Concurrent Federal Actions.........................10

      B.     *Colorado River* Abstention Is An Extremely Narrow
           Doctrine Applied Only In Exceptional Circumstances.......................................10

C.       This Action And The California DJ Action Are Not Parallel Proceedings ..........12

D.       Even If The Actions Were Parallel, Abstention Is Not Appropriate ...................13

E.       Papazyan's Forum Selection Argument Is Unsupported And Misplaced.............19

II.    THE COURT SHOULD NOT STAY THIS
       ACTION PURSUANT TO ITS INHERENT AUTHORITY ..........................................20

CONCLUSION.......................................................................................................................21

REQUEST FOR ORAL ARGUMENT..................................................................................21

LOCAL CIVIL RULE 7.2 CERTIFICATE OF COMPLIANCE ...............................................22

## TABLE OF AUTHORITIES

**CASES**                                                                                              **PAGE(S)**

*Almetals, Inc. v. Marwood Metal Fabrication Ltd.*,
  No. 19-CV-13254, 2020 WL 3263824 (E.D. Mich. June 17, 2020)......................... 14, 18

*American Plastics, LLC v. Hummel*,
  No. 3:24 CV 660, 2025 WL 660198 (N.D. Ohio Feb. 28, 2025)............................... 12, 20

*Ambrosia Coal and Const. Co. v. Pages Morales*,
  368 F.3d 1320 (11th Cir. 2004)................................................................................15

*Answers in Genesis of Kentucky, Inc. v. Creation Ministries, International, Ltd.*,
  556 F.3d 459 (6th Cir. 2009).....................................................................................10

*Baskin v. Bath Township Board of Zoning Appeals*,
  15 F.3d 569 (6th Cir. 1994)................................................................................. 11, 13

*Bender v. Newell Window Furnishings, Inc.*,
  681 F.3d 253 (6th Cir. 2012).......................................................................................7

*Burford v. Sun Oil Co.*,
  319 U.S. 315 (1943) ..................................................................................................18

*Chellman-Shelton v. Glenn*,
  197 F. App'x 392 (6th Cir. 2006)...............................................................................10

*CLT Logistics v. River West Brands*,
  777 F. Supp. 2d 1052...................................................................................................7

*Colorado River Water Conservation District v. United States*,
  424 U.S. 800 (1976) ...........................................................................................*passim*

*Crawley v. Hamilton County Commissioners*,
  744 F.2d 28 (1984) ....................................................................................................16

*Doe v. Ann Arbor Public Schools*,
  No. 11-15657, 2012 WL 1110015 (E.D. Mich. Apr. 3, 2012)................................. 12, 16

*Edge Investment, LLC v. D.C.*,
  927 F.3d 549 (D.C. Cir. 2019) ..................................................................................15

*Estate of Page v. Slagh*,
  No. 1:06-CV-245, 2007 WL 773401 (W.D. Mich. Mar. 9, 2007)................................12

*FaZe Clan Inc. v. Tenney*,
  407 F. Supp. 3d 440 (S.D.N.Y. 2019) ........................................................................19

*Focus Radio, Inc. v. Summit Radio, Inc.*,
    853 F. Supp. 252 (E.D. Mich. 1994) ................................................................. 14, 16, 18

*Foreword Magazine, Inc. v. OverDrive, Inc.*,
    No. 1:10-CV-1144, 2011 WL 31044 (W.D. Mich. Jan. 5, 2011) ...................................14

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*,
    460 U.S. 1 (1983) ..............................................................................................*passim*

*Nationwide Mutual Insurance Co. v. Knott County Water and Sewer District*,
    600 F. Supp. 3d 710 (E.D. Ky. 2022).......................................................................... 15, 19

*Necak v. Select Portfolios Servicing, Inc.*,
    No. 1:17 CV 1473, 2017 WL 6270238 (N.D. Ohio Dec. 8, 2017) .................................12

*Ohio Environment Council v. U.S. District Court, S. District of Ohio*,
    565 F.2d 393 (6th Cir. 1977).................................................................................20

*PaineWebber, Inc. v. Cohen*,
    276 F.3d 197 (6th Cir. 2001).................................................................................10

*Premier Dealer Servs., Inc. Allegiance Adm'rs, LLC*,
    No. 2:18-CV-735, 2019 WL 79038 (S.D. Ohio Jan. 2, 2019) ........................................20

*Romine v. Compuserve Corp.*,
    160 F.3d 337 (6th Cir. 1998)................................................................... 12, 14, 16

*RSM Richter, Inc. v. Behr Am., Inc.*,
    729 F.3d 553 (6th Cir. 2013).....................................................................................11

*S2 Yachts, Inc. v. ERH Marine Corp.*,
    855 F. App'x 273 (6th Cir. 2021)........................................................................... 17, 18

*S2 Yachts, Inc. v. ERH Marine Corp.*,
    No. 1:18-CV-389, 2018 WL 7858774
    (W.D. Mich. Nov. 16, 2018), *aff'd* 855 F. App'x 273 (6th Cir. 2021)............................18

*State Farm Mutual Auto. Insurance Co. v. Warren Chiropractic & Rehab Clinic P.C.*,
    No. 4:14-CV-11521, 2015 WL 4724829 (E.D. Mich. Aug. 10, 2015) ............................10

*Truserv Corp. v. Flegles, Inc.*,
    No. 03 C 3284, 2003 WL 22839812 (N.D. Ill. Nov. 25, 2003) .......................................19

*Two Men & a Truck International, Inc. v. Rupright*,
    No. 1:16-CV-23, 2016 WL 8808790 (W.D. Mich. Jan. 14, 2016) .................................21

*UEI, Inc. v. Quality Fabricated Metals, Inc.*,
    No. 1:06-CV-122, 2006 WL 1541353 (W.D. Mich. June 1, 2006) ..........................11, 12

*United American Healthcare Corp. v. Backs*,
   997 F. Supp. 2d 741 (E.D. Mich. 2014) ................................................................... 15, 18

*Wm. R. Hague, Inc. v. Sandburg*,
   468 F. Supp. 2d 952 (S.D. Ohio 2006) ........................................................................17

Plaintiff Acrisure of California, LLC ("Acrisure") respectfully submits this Brief in Opposition to the Motion to Dismiss ("Motion") filed by Defendant Hakop ("Jack") Papazyan.[1]

## PRELIMINARY STATEMENT

Defendant Hakop ("Jack") Papazyan does *not* dispute that, with the assistance of counsel, he executed several valid and binding agreements with Acrisure whereby Acrisure purchased his insurance brokerage business for millions of dollars and subsequently employed Papazyan. Papazyan also does *not* dispute that during his employment at Acrisure, he was paid millions of dollars and given access to Acrisure's confidential and proprietary information in order to cultivate relationships with customers on Acrisure's behalf.  And Papazyan does *not* dispute that he abruptly resigned from Acrisure to join one of Acrisure's direct competitors in a similar position.

In resigning from Acrisure, Papazyan has breached and will continue to breach a series of reasonable, limited-duration, geographically limited post-employment restrictive covenants preventing him from unfairly competing with Acrisure, including by unfairly soliciting Acrisure customers and employees.  Indeed, *Papazyan himself has essentially said so.*  Just one day after he resigned, Papazyan filed an anticipatory declaratory judgment and statutory unfair competition action in California—disregarding yet another contractual provision: a Michigan forum selection clause.  Papazyan asks the California state court to apply California law—in violation of a Michigan choice-of-law provision in his agreements with Acrisure—to help him shirk his post-employment contractual obligations to Acrisure and work for a direct competitor to Acrisure, Howden US Services, LLC or an affiliate ("Howden").

---

[1]    Citations to "Mot. at __" are to Papazyan's Brief in Support of Motion to Dismiss, ECF No. 20, PageID.338.

Acrisure filed this action to seek redress for Papazyan's breach of his post-employment obligations to Acrisure.  Consistent with his unlawful California suit, Papazyan again seeks to avoid accountability, asking this Court to dismiss or stay this action based on the abstention doctrine articulated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) and clarified in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983).  *Colorado River* abstention permits a federal court to abstain from exercising its jurisdiction over a "parallel" state-court proceeding, not on principles of federalism but in the interests of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  *Moses H. Cone*, 460 U.S. at 15 (quoting *Colorado River*, 424 U.S. at 817).  The Motion should be denied for multiple reasons.

*First*, by its terms, *Colorado River* abstention applies only where the allegedly parallel proceedings are pending in a state and federal court, respectively.  Consistent with the Federal Rules and 28 U.S.C. § 1441, Acrisure has timely removed Papazyan's improper California suit to the Central District of California.  Because both actions are pending in federal court, *Colorado River* has no seat at the table here.  That alone warrants denial of the Motion.

*Second*, even if *Colorado River* were applicable, this case does not present the extraordinary circumstances necessary for it to be appropriately used.  This action and the California action are not parallel, and nearly every one of the factors courts use to determine whether to abstain under *Colorado River*—which the Supreme Court has instructed are "heavily weighted" against abstention as a general matter—weighs in favor of this Court exercising jurisdiction.

*Finally*, Papazyan's alternative argument—that this Court should abstain under its inherent authority—also fails.  Papazyan has not shown that there is any pressing need for a stay

2

or that a stay would promote the efficient and expedient resolution of the parties' dispute.  Quite the opposite: a stay would serve only to allow Papazyan to further shirk his contractual obligations to Acrisure and undermine the public's interest in fair competition and the enforcement of voluntarily assumed contractual obligations.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

**A.      As Part Of The Sale Of His Insurance Business To Acrisure, Papazyan Agreed To The Covenants In The Asset Purchase Agreement In Exchange For Significant Consideration**

In 2020, as co-owner of the Gain Insurance Agency ("GIA"), Papazyan sold substantially all of GIA's assets—including its goodwill—to Acrisure pursuant to an Asset Purchase Agreement (cited as "APA").  (Compl. ¶¶ 18-19.)  Papazyan was represented by counsel from the law firm Knapp, Petersen & Clark, PC in negotiating and entering into the Asset Purchase Agreement and an associated employment agreement (*see infra* at pg. 4).  (Compl. ¶ 22.)

In exchange for the millions of dollars in value Acrisure paid and "as a condition and inducement to [Acrisure's] purchase of GIA" (*See* APA § 5.1(b), ECF No. 8-1, PageID.64), Papazyan agreed to non-competition and business and employee non-solicitation covenants that are reasonably limited in time and geographic scope given (i) Acrisure's acquisition of GIA, (ii) the nature of GIA's and Acrisure's businesses, and (iii) Papazyan's employment at Acrisure. Papazyan further agreed in the Asset Purchase Agreement that Acrisure is "entitled to legal and equitable relief in court if [Papazyan] breaches any Restrictive Covenant," including filing a court action "to specifically enforce the terms of the Restrictive Covenants, and to obtain a

---

[2]      Capitalized terms not defined herein have the same meanings as in the Verified Complaint for Injunctive Relief (ECF No. 1, PageID.1).

3

temporary or permanent injunction in an action in equity without the necessity of proving actual damages." (Compl. ¶¶ 59, 78; *see also* APA § 5.1(c)(ii), ECF No. 8-1, PageID.65.)

**B.    As A Condition To The Sale Of His Business To Acrisure, Papazyan Agreed To The Covenants In His Employment Agreement In Exchange For Significant Compensation**

As a condition of and inducement to the closing of the sale of GIA to Acrisure, Papazyan entered into an employment agreement with Acrisure (cited as "EA"). (Compl. ¶¶ 20-21, 24-26, 30, 36-38; *see also* EA § 13(b), ECF No. 8-2, PageID.78-79.)

The Employment Agreement was negotiated and entered into as part of the sale of GIA to Acrisure and Papazyan was represented in those negotiations by the same law firm—Knapp, Petersen & Clark, PC. (Compl. ¶¶ 22-23; EA § 17(h), ECF No. 8-2, PageID.83.) Indeed, in the Employment Agreement, Papazyan acknowledged that the parties had "mutually prepared [the] Agreement through the process of negotiation and the involvement, to the extent desired, of independent counsel." (Compl. ¶¶ 22-23; A § 17(h), ECF No. 8-2, PageID.83.) The Employment Agreement is identified as a closing delivery to the Asset Purchase Agreement and is attached to the Asset Purchase Agreement. (APA § 5.5, ECF No. 8-1, PageID.66.)

Like in the Asset Purchase Agreement, Papazyan agreed in the Employment Agreement to reasonable non-competition and business and employee non-solicitation covenants, "[i]n consideration of, and as a condition and inducement to [Acrisure's] purchase of [GIA]." (EA § 13(b), ECF No. 8-2, PageID.78-80). Papazyan also agreed to provide "at least forty-five (45) days' prior written notice" before terminating his employment with Acrisure. (Compl. ¶ 37; EA § 8(a)(i), ECF No. 8-2, PageID.75.) Papazyan also agreed that Acrisure is "entitled to legal and equitable relief in court if [Papazyan] breaches any Restrictive Covenant," including seeking a court action "to specifically enforce the terms of the Restrictive Covenants, and to obtain a

4

temporary or permanent injunction in an action in equity without the necessity of providing actual damages."  (Compl. ¶¶ 47, 49, 76; EA § 14(b), ECF No. 8-2, PageID.80.)

**C.      Papazyan Agreed That The Asset Purchase Agreement
And Employment Agreement And Employment Agreement Are
<u>Governed By Michigan Law And That Disputes Would Be Resolved In Michigan</u>**

Papazyan agreed that both the Asset Purchase Agreement and Employment Agreement "shall be governed, construed, interpreted and enforced in accordance with the domestic laws of the State of Michigan, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Michigan or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Michigan."  (Compl. ¶¶ 74-75; APA § 7.14, ECF No. 8-1, PageID.67; EA § 17(d), ECF No. 8-2, PageID.82.)

Papazyan also agreed that all actions arising from or related to the Employment Agreement for which a party seeks injunctive relief "shall be brought only in a state court of competent subject matter jurisdiction in Kent County, Michigan, or in the federal courts of competent subject matter jurisdiction in the Western District of Michigan."  (Compl. ¶ 82; EA § 17(d), ECF No. 8-2, PageID.82.)  Papazyan further "expressly and irrevocably consent[ed] to personal jurisdiction and venue in such courts, and agree[d] not to object to such jurisdiction or venue on the ground *of forum non conveniens* or otherwise."  (Compl. ¶ 83; EA § 17(d), ECF No. 8-2, PageID.82.)[3]

---

[3]      The Asset Purchase Agreement provides that claims arising out of the agreement "shall be settled by binding arbitration" in Michigan, but that "[e]ither party may seek any interim or preliminary relief, necessary to protect its rights or property pending the completion of arbitration, in a court of competent jurisdiction."  (APA § 7.14, ECF No. 8-1, PageID.67.)

**D.**      **After The Sale, Papazyan Was Employed As A Senior Acrisure Employee**

In August 2020, after the sale of his business, Papazyan was employed by Acrisure of California, LLC in Glendale, California.  (Compl. ¶¶ 19-20.)  Papazyan was responsible for managing, soliciting, and selling customers various insurance products and services, as well as providing related services to and developing goodwill with Acrisure customers.  (Compl. ¶ 36.) As Papazyan acknowledged in the Employment Agreement, in his role, Papazyan had access to, and made use of, Acrisure's proprietary and confidential information.  (Compl. ¶¶ 32, 36; EA § 13, ECF No. 8-2, PageID.78-80.)

**E.**      **On April 9, 2026, Papazyan Resigned From
            Acrisure, Seemingly To Join A Direct Competitor**

On April 9, 2026, Papazyan resigned "effective immediately" from his position at Acrisure.  (Compl. ¶ 63.)  Papazyan sent his resignation email to Patrick Thomas, who is now the leader of a trucking insurance business for Howden, an insurance brokerage firm that recently announced it was launching a U.S. trucking insurance business that will directly compete with Acrisure.  Papazyan did not provide Acrisure with the contractually required written notice of termination at least 45 days prior to his resignation, thereby violating the EA.  (Compl. ¶ 66; EA § 8(a)(i), ECF No. 8-2, PageID.75.)

Acrisure understands that Papazyan has joined the same competitor.  (*See* Compl. ¶¶ 64-65, 68-71.)  Acrisure believes that Papazyan is currently working in Orange County, California, where he previously worked for Acrisure, which is within the geographic restrictions of the Employment Agreement Non-Competition Covenant, Employment Agreement Business Non-Solicitation Covenant, Employment Agreement Employee Non-Solicitation Covenant, Asset Purchase Agreement Non-Competition Covenant, Asset Purchase Agreement Business Non-Solicitation Covenant, and Asset Purchase Agreement Employee Non-Solicitation Covenant

(collectively the "Negotiated Restrictive Covenants").  (Compl. ¶ 67.)  Papazyan's conduct directly violates his agreements.

Papazyan did not act alone.  In the days following Papazyan's resignation, more than 25 Acrisure employees from Acrisure's Trucking group who worked with Papazyan resigned. (Compl. ¶¶ 72-73, 100-08, 125-33.)  Acrisure understands that most, and perhaps all, of them have joined Acrisure's competitor.  Acrisure has reason to believe that Papazyan has or intends to solicit other Acrisure employees to join him at the competitor company, in violation of the Employment Agreement Employee Non-Solicitation Covenant and the Asset Purchase Agreement Employee Non-Solicitation Covenant.  (Compl. ¶¶ 72-73, 100-08, 125-33.)  Acrisure further has reason to believe that Papazyan has or intends to solicit Acrisure's customers, in violation of the Employment Agreement Business Non-Solicitation Covenant and the Asset Purchase Agreement Business Non-Solicitation Covenant.  (Compl. ¶¶ 69, 92-99, 117-24.)

**F.      Papazyan Filed An Improper Anticipatory California Action
Seeking To Invalidate The Negotiated Restrictive Covenants And
Circumvent This Court's Proper Jurisdiction Under The Agreements**

On April 13, 2026, Papazyan, apparently seeking to deprive Acrisure of its bargained-for-rights, filed an anticipatory declaratory judgment action in an improper, out-of-state forum, captioned *Papazyan v. Acrisure of California, LLC*, Case No. 26ST-CV-11708 (Cal. Super. Ct. L.A. Cnty.) ("California DJ Action").[4]  In that action, Papazyan seeks a declaratory judgment

---

[4]      The Court may take judicial notice of court records in other cases because they are public records whose accuracy cannot reasonably be questioned.  *E.g.*, *CLT Logistics v. River W. Brands*, 777 F. Supp. 2d 1052 1061-62 (E.D. Mich. 2011) (taking judicial notice of docket in action filed in Illinois state court).  Moreover, Papazyan's statements in his improperly filed declaratory judgment action constitute binding party admissions.  *See Bender v. Newell Window Furnishings, Inc.*, 681 F.3d 253, 259 (6th Cir. 2012) (explaining, while affirming summary judgment for plaintiffs, that the district court "properly recognized" a complaint defendants had filed in another action seeking declaratory and injunctive relief "as containing a 'party admission' that could be considered with the other evidence in the record" in the instant case).

attempting to invalidate virtually all of his contractual obligations to Acrisure, including the Michigan choice of law provisions, the Michigan forum selection provision, and the non-competition and non-solicitation covenants in both agreements. (*See id.* ¶ 11.) Papazyan presumably engaged counsel and filed a lawsuit seeking such a declaration because he has or imminently intends to breach the covenants by competing with Acrisure contrary to the terms of his restrictive covenants.[5] Indeed, while Papazyan represents in his California complaint that, since the termination of his relationship with Acrisure he has abided by his "confidentiality obligations," noticeably absent is any representation that Papazyan abided by his non-competition and non-solicitation covenants. (*Id.* ¶ 44.)

**G.      Acrisure Brings Suit In The Contractually Agreed Michigan Forum To Protect Its Rights, And The Court Enters a TRO**

On April 14, 2026, Acrisure brought this Michigan action to enforce the restrictive covenants in Papazyan's agreements with Acrisure, including the Non-Competition Covenants, in the contractually agreed Michigan forum. (ECF No. 1, PageID.1.)

On April 27, 2026, Acrisure moved for a temporary restraining order ("TRO"), seeking to restrain Papazyan from continuing to violate his contractual obligations to Acrisure. (ECF No. 13, PageID.159.) This Court granted Acrisure's motion and entered a temporary restraining order. (ECF No. 23, PageID.358.) The TRO enjoins Papazyan "and all persons in active concert or participation with him, from taking any action that violates Papazyan's non-competition covenants in (i) the employment agreement between Acrisure and Papazyan, or (ii) the asset

---

[5]      Notably, the California counsel representing Papazyan in that action have previously filed appearances representing other groups of employees who left their employer to join Howden in litigation regarding alleged violations of their contractual obligations to their prior employers. (Clark Decl. Ex. 7 (Summary of Dorsey & Whitney Representations of Howden New Hires) (ECF No. 36-7, PageID.464).)

purchase agreement between Acrisure and Papazyan, including with respect to Papazyan's employment or affiliation with and provision of services to Howden U.S. Services, LLC or its affiliates ('Howden'), a direct competitor of Acrisure."  (ECF No. 23, PageID.358.)

**H.        Papazyan Files Motions To Stay/Dismiss This Action And Dissolve The TRO**

On April 27, 2026, Papazyan filed the Motion.  (ECF No. 19, PageID.331.)  In it, Papazyan asks this Michigan Court to dismiss or stay this Michigan litigation in favor of the California DJ Action under the *Colorado River* doctrine, or, alternatively, to stay this action pursuant to the Court's inherent authority.  (*See generally* ECF No. 20, PageID.338.)  The next day, Papazyan filed a motion to dissolve the TRO.  (ECF No. 26, PageID.363.)

**I.        Acrisure Removes The California DJ Action To Federal Court**

On May 1, 2026, Acrisure removed the California DJ Action from state court to federal court in the Central District of California.  *See* Notice of Removal, *Papazyan v. Acrisure of Cal., LLC*, No. 26-CV-04714, ECF No. 1 (C.D. Cal. May 1, 2026).[6]  As a result, there are currently no state court proceedings pending between the parties.

**J.        The Court Denies Papazyan's Motion To Dissolve The TRO**

On May 4, 2026, Acrisure timely filed its response to Papazyan's dissolution motion.  (ECF No. 35, PageID.400.)  On May 5, 2026, the Court denied Papazyan's motion to dissolve,

---

[6]        Since Acrisure removed the California DJ Action, Papazyan filed an ex parte application for an anti-suit TRO to prevent Acrisure from litigating this action in this Court.  (EX PARTE APPLICATION for Temporary Restraining Order As To Enjoin Acrisure From Enforcement Of Restrictive Covenant BPC 16600, 16600.5, No. 26-CV-04714 (C.D. Cal. May 1, 2026) ECF No. 9.)  Acrisure has responded to that motion.  (Opposition re: EX PARTE APPLICATION for Temporary Restraining Order As To Enjoin Acrisure From Enforcement Of Restrictive Covenant BPC 16600, 16600.5, No. 26-CV-04714 (C.D. Cal. May 1, 2026) ECF No. 15.)  Acrisure has also filed a motion to transfer the case.  (Notice Of Motion And Motion To Transfer Case To Western District Of Michigan, No. 26-CV-04714 (C.D. Cal. May 1, 2026) ECF No. 9.)

holding that Papazyan had "not demonstrate[d] that dissolution is warranted." (ECF No. 42, PageID.587.)

## ARGUMENT

**I.      PAPAZYAN'S *COLORADO RIVER*
ARGUMENT IS MOOT; EVEN IF IT WERE
NOT, ABSTENTION IS NOT APPROPRIATE HERE,
AND THE COURT SHOULD NOT SURRENDER ITS JURISDICTION**

As the party requesting it, Papazyan has the "burden to prove that abstention is proper." *See State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic P.C.*, No. 4:14-CV-11521, 2015 WL 4724829, at *15 (E.D. Mich. Aug. 10, 2015) (stating the party "contesting jurisdiction, [has the] burden to prove that abstention is proper.") (citing *Answers in Genesis of Ky., Inc. v. Creation Ministries, Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009)).  He has failed to do so.

### A.      *Colorado River* Is Inapplicable To Concurrent Federal Actions

*Colorado River* abstention is applicable only to concurrent state and federal proceedings, not two concurrent federal proceedings. *Chellman-Shelton v. Glenn*, 197 F. App'x 392, 394 (6th Cir. 2006).  There is no pending state proceeding.  Because the California DJ Action is now pending in the federal court in Central District of California—and as this Court recognized (ECF No. 42, PageID.588)—*Colorado River* is inapplicable *ab initio*, and the Motion should be denied.

### B.      *Colorado River* Abstention Is An Extremely Narrow Doctrine Applied Only In Exceptional Circumstances

Even if the *Colorado River* doctrine were generally applicable, and it is not, Papazyan has not demonstrated that it is appropriately applied here.

"[F]ederal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them" by Congress. *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001)

10

(quoting *Moses H. Cone*, 460 U.S. at 15) (citation modified) (ellipses in original) (affirming order from district court declining to abstain under *Colorado River*).[7]  Accordingly, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," *id.*, and it will be appropriate only in "exceptional circumstances" with the "clearest of justifications."  *Moses H. Cone*, 460 U.S. at 14-16 (quoting *Colorado River*, 424 U.S. at 813) (citation modified).  The "mere pendency of a state-court case concerning the same subject matter as a federal case is not reason enough to abstain."  *See RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 557 (6th Cir. 2013) (reversing order from district court abstaining under *Colorado River*) (citation omitted).

In considering whether to abstain under *Colorado River*, courts undertake a two-step analysis.  *See Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 571 (6th Cir. 1994).  *First*, the court must determine whether the state and federal actions are, in fact, "parallel."  *Id.* (citation omitted); *see also UEI, Inc. v. Quality Fabricated Metals, Inc.*, No. 1:06-CV-122, 2006 WL 1541353, at *4 (W.D. Mich. June 1, 2006) (declining to abstain under *Colorado River*).  *Second*, the court considers a series of factors identified in *Colorado River* and its progeny: "(1) whether the state court has assumed jurisdiction over any rea or property, (2) whether the federal forum is less convenient to the parties, (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained, (5) whether the source of governing law is state or federal, (6) the adequacy of the state court action to protect the federal rights of the plaintiff, (7) the relative progress of the state and federal proceedings, and (8) the presence or absence of concurrent

---

[7]     The factual circumstances at issue in *Colorado River* involved an elaborate state agency scheme for adjudicating rights to scarce water sources, including divvying up the physical region into divisions and assigning Water Referees and Judges to assess individual water diversions and usages on a rolling basis, and the case involved over 1,000 defendants.  *See generally Colorado River*, 424 U.S. at 804-05 (discussing the elaborate scheme).  It strains credulity to conceive how these facts could have sound general application, much less to a restrictive covenant dispute.

11

jurisdiction." *UEI, Inc.*, 2006 WL 1541353, at *4 (citation omitted). The court should engage in a "careful balancing of" these factors but—as Papazyan concedes (Mot. at 6)—"with the balance *heavily weighted* in favor of the exercise of jurisdiction." *Id.* (emphasis added).

**C.      This Action And The California DJ Action Are Not Parallel Proceedings**

The Motion fails to demonstrate that this action and the California DJ Action are parallel proceedings. (Mot. at 5-6.)

For two cases to be "parallel" for purposes of *Colorado River* abstention, they "must be 'substantially similar.'" *Est. of Page v. Slagh*, No. 1:06-CV-245, 2007 WL 773401, at *1 (W.D. Mich. Mar. 9, 2007) (quoting *Romine v. Compuserve Corp.*, 160 F.3d 337, 340-41 (6th Cir. 1998)). "Parallel proceedings exist 'when substantially the same parties are contemporaneously litigating substantially the same issues in another forum.'" *Id.* (citation omitted); *see also Doe v. Ann Arbor Pub. Schs.*, No. 11-15657, 2012 WL 1110015, at *2 (E.D. Mich. Apr. 3, 2012) ("For proceedings to be parallel, the facts, parties, and claims must be substantially similar."). The "critical question is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Am. Plastics, LLC v. Hummel*, No. 3:24 CV 660, 2025 WL 660198, at *3 (N.D. Ohio Feb. 28, 2025) (citation modified) (declining to abstain under *Colorado River*).

In other words, cases are "parallel" only where the state action "would allow for a quick and prompt resolution between the parties, such that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Necak v. Select Portfolios Servicing, Inc.*, No. 1:17 CV 1473, 2017 WL 6270238, at *1 (N.D. Ohio Dec. 8, 2017) (citation modified) (declining to abstain under *Colorado River*). Notably, the actions must be parallel as they currently exist; it is insufficient that the state court proceeding potentially *could* be modified to parallel the federal action or vice versa. *See Baskin*, 15 F.3d at 572 (6th Cir.

1994) ("[T]he district court must compare the issues in the federal action to the issues actually raised in the state court action, not those that might have been raised.") (affirming order from district court declining to abstain).

The California DJ Action, if resolved, would not necessarily give this Court "nothing to do."  The California DJ Action involves declaratory judgment and California statutory unfair competition law claims concerning the enforceability of the EA's forum selection, choice of law, and notice provisions, as well as the Restrictive Covenants.  *See* Complaint, *Papazyan v. Acrisure of Cal. LLC*, No. CGC-24-625311 (Ca.  Super. Ct.).  Conversely, this Michigan action involves Acrisure's claim that Papazyan breached the Employment Agreement by, among other things, accepting a position at Acrisure's direct competitor.  (*See generally* Complaint, ECF No. 1, PageID.1.)  Given these differences, there are multiple potential resolutions to the California DJ Action that would still require this Court to adjudicate the parties' dispute.  If, for example, the California court were to find the forum selection and choice-of-law clauses to be enforceable, the California DJ Action will necessarily be dismissed for *forum non conveiens*, and the parties' dispute will be pending *only* before this Court.  If the California court were to find the Restrictive Covenants to be unenforceable, as Papazyan posits, Acrisure's claim for breach of those Restrictive Covenants may be resolved as a result.  If, however, the California court agrees with Acrisure and finds those Restrictive Covenants to be enforceable, this Court would still need to resolve Acrisure's claims of breach.

**D.      Even If The Actions Were Parallel, Abstention Is Not Appropriate**

Even if the actions were parallel, the Motion does not demonstrate that the *Colorado River* factors weigh in favor of abstention here—let alone "decisively" so, as Papazyan erroneously claims.  (Mot. at 6-9.)  "[D]oubts as to whether a particular factor exists in the abstention determination should be resolved against [abstention], for only the clearest of

13

justifications will warrant abstention." *Focus Radio, Inc. v. Summit Radio, Inc.*, 853 F. Supp. 252, 256 (E.D. Mich. 1994) (declining to abstain under *Colorado River*); *see Foreword Mag., Inc. v. OverDrive, Inc.*, No. 1:10-CV-1144, 2011 WL 31044, at *2 (W.D. Mich. Jan. 5, 2011) (declining *Colorado River* abstention in trademark infringement context despite declaratory judgment case in state court); *Moses H. Cone*, 460 U.S. at 28 ("If there is any substantial doubt as to [whether the pending state court case would be an adequate vehicle for complete and prompt resolution], it would be a serious abuse of discretion to grant the stay or dismissal at all.").

*(1) Whether The State Court Has Assumed Jurisdiction Over Any Rea Or Property.* Papazyan claims that this factor is "neutral." (Mot. at 9.)  Under Papazyan's own cited authorities, that is incorrect.  Specifically, in *Romine v. Compuserve Corp.*, 160 F.3d 337 (6th Cir. 1998), cited repeatedly by Papazyan (ECF No. 20, PageID.338), the Sixth Circuit held that where no property is at issue, this fact is "inapposite" and "thus weighs against abstention." *Id.* at 341.

*(2) Whether The Federal Forum Is Less Convenient To The Parties.*  Citing no authority whatsoever, Papazyan argues that California is more convenient *for him* and that this factor thus weighs in favor of abstention.  (Mot. at 8-9.)  Again, Papazyan is incorrect; this factor actually weighs against abstention or is, at most, neutral.

For purposes of a *Colorado River* analysis, a party's agreement to a forum selection clause waives arguments that the chosen forum is inconvenient.  *See Almetals, Inc. v. Marwood Metal Fabrication Ltd.*, No. 19-CV-13254, 2020 WL 3263824, at *4 (E.D. Mich. June 17, 2020) (declining to abstain under *Colorado River*).  Because there is a valid Michigan forum selection clause here (Compl. ¶¶ 82-83), Papazyan thus cannot argue that California is more convenient.

14

Aside from the Michigan forum selection clause, this factor would be neutral, as Papazyan concedes that Michigan is more convenient for Acrisure (Mot. at 9) while asserting that California is more convenient for him. *See United Am. Healthcare Corp. v. Backs*, 997 F. Supp. 2d 741, 753 (E.D. Mich. 2014) ("[I]t is no surprise that Plaintiff argues that Michigan federal court is a more convenient forum than California state court whereas Defendants argue the opposite. Both are likely true as far as the parties' own interests are concerned. This Court finds that the second factor is neutral.") (declining to abstain under *Colorado River*).

> **(3) Avoidance of Piecemeal Litigation.** This factor weighs against abstention. The mere fact that concurrent parallel actions exist is not sufficient to "present the danger of piecemeal litigation needed in order to grant abstention." *Focus Radio*, 853 F. at 256. Nor is the "mere potential for conflict in the results of adjudications." *Colorado River*, 424 U.S. at 816. "That the state result and federal result might differ is a feature of dual sovereignty; this is not the worry of *Colorado River*, which readily acknowledged that state and federal concurrent litigation normally is proper," even on the same matter. *Nationwide Mut. Ins. Co. v. Knott Cnty. Water & Sewer Dist.*, 600 F. Supp. 3d 710, 714 (E.D. Ky. 2022) (declining to abstain under *Colorado River*). The Supreme Court, in *Colorado River*, emphasized that the "most important" factor in applying the abstention doctrine there was that the federal statute at issue had clearly evinced a federal policy to avoid piecemeal litigation over water rights. *Colorado River*, 424 U.S. at 819.

> Instead, *Colorado River* is concerned with piecemeal litigation that is "abnormally excessive or deleterious," *Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1333 (11th Cir. 2004); *Edge Inv., LLC v. D.C.*, 927 F.3d 549, 556 (D.C. Cir. 2019). In other words, *Colorado River* is relevant only where there are "multiple parties asserting a similar claims, not identical parties asserting different legal theories based on the same set of facts." *Doe*, 2012 WL

15

1110015, at *5 (citing *Crawley v. Hamilton Cnty. Com'rs*, 744 F.2d 28 (1984)).  The facts of

*Colorado River* demonstrate the "extraordinary" circumstances in which the risk of piecemeal

litigation weighs in favor of abstention.  There, an action was pending in a Colorado state court

concerning the water rights in a river system.  424 U.S. at 805-06.  While that action was

pending, the United States commenced a suit in federal court to establish its rights and the rights

of certain Native American tribes to the same water.  *Id.*  One of the defendants in the state court

action then impleaded the United States into the state court action with the goal of having all

claims adjudicated in that action.  *Id.* at 806.  The district court abstained from hearing the

United States' federal action.  *Id.*  The Supreme Court affirmed and held that abstention was

appropriate.  *Id.* at 820.  In discussing the risk of piecemeal litigation, the Court emphasized that

both the state and federal actions concerned the rights to the same water.  *Id.* at 819-20.  The

potential harm from inconsistent judgments was therefore substantial: if the state and federal

courts determined that different parties had the rights to the same finite resource, a serious

problem would arise.  *Id.*

Here, "[t]here simply are no exceptional circumstances which give rise to the dangers of

piecemeal litigation, as articulated by the Court in *Colorado River*."  *Focus Radio*, 853 F. Supp.

at 256.  This is a two-party dispute, and the claims "involve ordinary contract" claims, "which

[this] court is entirely capable of deciding."  *Id.*[8]  And while concurrent cases may cause a

duplication of effort and potentially conflicting results, duplication alone is insufficient to justify

---

[8]     Actions in which the Sixth Circuit has found the risk of piecemeal litigation to weigh in
favor of abstention further illustrate why this action is *not* extraordinary in that regard.  In
*Romine*, for example, the Sixth Circuit found there to be a sufficient risk of piecemeal litigation
where the two state and two federal actions at issue were all shareholder class actions where the
putative classes overlapped.  160 F.3d at 341 (noting that "[c]omplex class litigation is
particularly suited to the application of a non-duplication principle").

abstention and, "if necessary, the courts can decide res judicata questions." *S2 Yachts, Inc. v. ERH Marine Corp.*, 855 F. App'x 273, 279 (6th Cir. 2021).

*(4) The Order in Which Jurisdiction Was Obtained and (7) The Relative Progress of the State and Federal Proceedings.* These closely related factors weigh against abstention. While Papazyan filed his anticipatory complaint first, courts should not mechanically or exclusively assess the timeline but rather take a "pragmatic, flexible" approach to the realities of the cases. *See Moses H. Cone*, 460 U.S. at 21-22. Acrisure filed its complaint in this action the day after Papazyan filed the unlawful California DJ Action, and "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Id.* at 21 (19-day head start for state court action did not weigh in favor of abstention where more progress had been made in federal action).

It is indisputable that more progress has been made in this action. The only events that have occurred in the California DJ Action thus far are (i) the case initiation documents, (ii) removal, and (iii) and two unadjudicated motions. *See* Docket, *Papazyan v. Acrisure of Cal. LLC*, No. CGC-24-625311 (Ca. Super. Ct.); Docket, *Papazyan v. Acrisure of Cal. LLC*, No. 26-cv-04714 (C.D. Cal.). By contrast, here, (i) the parties have met-and-conferred on various topics, (ii) multiple motions have been filed (and fully briefed), and (iii) the Court ruled on several of those motions already, including entering the TRO, denying a motion to dissolve that TRO and granting Acrisure's Renewed Motion For Expedited Discovery. This action—which now has more than 40 entries on the docket—is thus more advanced. *See Wm. R. Hague, Inc. v. Sandburg*, 468 F. Supp. 2d 952, 959 (S.D. Ohio 2006) (where actions were filed twelve days apart, finding that second-filed action was more advanced and weighed against abstention where

the court had "already taken the step of mediating an agreement between the parties concerning plaintiff's claims for injunctive relief").

**(5) *Whether the Source Of Governing Law Is State or Federal.*** This factors weighs against abstention. Where, as here, a forum selection clause is at issue in a federal court action, federal law governs questions regarding that clause. *Almetals*, 2020 WL 3263824, at *5; *S2 Yachts, Inc. v. ERH Marine Corp.*, No. 1:18-CV-389, 2018 WL 7858774, at *5 (W.D. Mich. Nov. 16, 2018), *aff'd* 855 F. App'x 273 (6th Cir. 2021) (holding that forum selection clause designating Michigan weighed against surrendering jurisdiction in favor of foreign court). Moreover, while Acrisure's causes of action are for breach of contract arise under Michigan law, they could be heard by either state or federal courts. (ECF No. 1, PageID.12-14.) These issues are "routine," not "a type which the district court is incapable of deciding." *Focus Radio*, 853 F. Supp. at 255. Nor do the state-law claim raise any questions "bearing on state policy" such that federal a federal decision would "impair efforts to implement state policy" *Colorado River*, 424 U.S. at 815-16 (discussing federal court resolution of well-settled state-law claims as not effecting concerns raised in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) and thus not triggering abstention). Moreover, the Court's task is "not to find some substantial reason for the *exercise* of federal jurisdiction" but rather to determine if exceptional circumstances "justify the *surrender* of that jurisdiction." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26 (emphasis in original).

**(6) *The Adequacy of The State Court Action To Protect the Federal Rights of the Plaintiff.*** This factor is neutral, as Acrisure is not asserting any federal rights in this action. *See United Am. Healthcare*, 997 F. Supp. 2d at 753; *but see S2 Yachts, Inc*, 2018 WL 7858774, at *5 (denying dismissal and stay on *Colorado River* grounds and contemplating no federal rights

18

asserted but noting a non-Michigan court applying Michigan law pursuant to an agreement weighed against abstention in this factor).

**(8) The Presence or Absence of Concurrent Jurisdiction.**   This factor generally weighs in favor of abstention when concurrent jurisdiction exists.  *Nationwide Mut. Ins. Co.*, 600 F. Supp. 3d at 714.

*          *          *

In sum, because seven of the eight of the *Colorado River* factors either weigh <u>against</u> abstention (i.e., in favor of this Court retaining jurisdiction) or are neutral, there are no "exceptional circumstances" present that would justify the Court's surrender of its jurisdiction. *Colorado River*, 424 U.S. at 13.

**E.        <u>Papazyan's Forum Selection Argument Is Unsupported And Misplaced</u>**

Papazyan argues that the "forum selection clause does not override *Colorado River* abstention."  (Mot. at 9-10.)  Citing zero authorities whatsoever, Papazyan erects a strawman, claiming that because the enforceability of the forum selection and choice-of-law clauses is in dispute, the forum selection clause cannot "deprive this Court of the discretion to apply" *Colorado River* abstention.  (*Id.*)

This argument fails.  The parties' dispute over the enforceability of the forum selection and choice-of-law clauses does not dictate, as Papazyan suggests, that *Colorado River* applies here.  As courts have recognized, "it cannot be the case that *Colorado River* allows parties to avoid a mandatory forum selection clause in a contract"—even if the enforceability of that clause is in dispute—"simply by beating their adversary to the courthouse."  *FaZe Clan Inc. v. Tenney*, 407 F. Supp. 3d 440, 444 (S.D.N.Y. 2019) (declining to abstain and noting that the enforceability of the forum selection clause would be decided at later stage of the litigation); *Truserv Corp. v. Flegles, Inc.*, No. 03 C 3284, 2003 WL 22839812, at *4 (N.D. Ill. Nov. 25, 2003) (declining to

19

abstain; noting that, "the reason that the cases have developed in separate venues is Flegles

disregard of the forum selection clause and its race to the courthouse.  We will not allow the

concern of piecemeal litigation to override the principles of fairness and equity.  Were it

otherwise, any party seeking to avoid the effect of a forum selection clause could simply file[]

suit first in a venue of its choice and argue that the venue of its choice should hear all claims in

order to avoid piecemeal litigation").

## II.    THE COURT SHOULD NOT STAY THIS ACTION PURSUANT TO ITS INHERENT AUTHORITY

In the alternative, Papazyan argues that the Court should choose to stay this action

pursuant to its inherent authority to control its docket.  (Mot. at 10-11.)  As the party seeking a

stay, Papazyan "must make out a clear case of hardship or inequity in being required to go

forward, if there is even a fair possibility that the stay for which he prays will work damage to

someone else."  *Ohio Env't Council v. U.S. Dist. Ct., S. Dist. of Ohio*, 565 F.2d 393, 396 (6th

Cir. 1977).  Papazyan bears the burden "to show that there is pressing need for delay, and that

neither the other party nor the public will suffer harm from entry of the order" to stay.  *Id.*

Papazyan has not met this burden:

- There is no "pressing need for delay."  Staying this action would not promote "the efficient and expedient resolution of cases."  *Am. Plastics, LLC v. Hummel*, 2025 WL 660198, at *6 (denying motion to stay).  To the contrary, a stay would *slow* resolution of the parties' dispute, as this case is further advanced and resolution of the California DJ Action would not entirely dispose of the issues between the parties (*see supra* pp. 11-13).  *See Premier Dealer Servs., Inc. Allegiance Adm'rs, LLC*, No. 2:18-CV-735, 2019 WL 79038, at*7 (S.D. Ohio Jan. 2, 2019) (denying request for stay based on pendency of litigation in another forum with overlapping evidence and parties).

- Papazyan has not shown "a clear case of hardship or inequity in being required to go forward."  While Papazyan vaguely claims that he will suffer hardship by being required to litigate in this Court (Mot. at 11), that is precisely what he agreed—with the assistance of counsel—to do.

20

- Acrisure and the public interest would be harmed if a stay were entered.  A stay would deprive Acrisure of its bargained-for right to have this dispute heard in this Court.  And, as courts in this district routinely recognize, the public has an interest "in fair competition and in having individuals and businesses uphold their contractual obligations."  *Two Men & a Truck Int'l, Inc. v. Rupright*, No. 1:16-CV-23, 2016 WL 8808790, at *2 (W.D. Mich. Jan. 14, 2016).

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.2(d), Acrisure respectfully requests oral argument on

Papazyan's Motion.


Dated: May 5, 2026

SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP

By: */s/ Christopher G. Clark*

Christopher G. Clark (663455-MA)
Catherine A. Fisher (686163-MA)
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
christopher.clark@skadden.com
catherine.fisher@skadden.com

- and -

WARNER NORCROSS + JUDD LLP
Edward J. Bardelli (P53849)
150 Ottawa Avenue, Suite 1500
Grand Rapids, Michigan 49503
(616) 752-2000
ebardelli@wnj.com

*Attorneys for Plaintiff*
*Acrisure of California, LLC*

## LOCAL CIVIL RULE 7.2 CERTIFICATE OF COMPLIANCE

I, Christopher G. Clark, certify that, in preparation of this Brief, I used Microsoft® Office Word Version 2407, and that this word processing program has been applied specifically to include all text, including headings, footnotes, and quotations, in the following word count.  I further certify that the above-referenced Brief contains 6,459 words.

 /s/ *Christopher G. Clark*
Christopher G. Clark
