UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ACRISURE OF CALIFORNIA, LLC,

      Plaintiff,

                                   Case No. 1:26-cv-1213

v.

                                   HON. JANE M. BECKERING

HAKOP PAPAZYAN,

      Defendant.

_____/


**OPINION AND ORDER**

This recently filed diversity case concerns Defendant Hakop Papazyan (Papazyan)'s alleged violations of certain provisions of his contracts with Plaintiff Acrisure of California, LLC (Acrisure).  Pending before the Court is Howden US Services, LLC (Howden)'s May 16, 2026 Motion to Intervene (ECF No. 73), seeking to participate as an intervening defendant, be heard on Acrisure's preliminary-injunction motion, and "assert other appropriate motions throughout the action" (ECF No. 73 at PageID.1048; ECF No. 74 at PageID.1057).  To that end, Howden filed a proposed response in opposition to the motion for a preliminary injunction (ECF No. 77). Papazyan does not oppose Howden's motion for intervention.  *See* ECF No. 75 at PageID.1173. On May 18, 2026, Acrisure filed a response in opposition to intervention by Howden (ECF No. 79).  The Court permitted Howden to file an oversized reply (ECF No. 102) and concomitantly required a sur-reply from Acrisure, which was filed on May 19, 2026 (ECF No. 106). Having considered the thorough submissions at bar, the Court concludes that oral argument is not necessary to resolve the issues presented.  See W.D. Mich. LCivR 7.2(d).  For the following reasons, Howden's motion is denied.

# I.  BACKGROUND

## A.  Factual Background

Papazyan, a California resident, along with his brother, owned Gain Insurance Agency (GIA), a California insurance brokerage firm that they co-founded in 2010.  Acrisure is an LLC with its principal place of business in Grand Rapids, Michigan (Compl. [ECF No. 1] ¶ 5).  Per its Chief of Staff, Acrisure provides "intelligence-driven financial services solutions" across many industries, including the insurance brokerage industry (Schutt Decl. [ECF No. 14] ¶¶ 5–6).  As part of its business, Acrisure spends significant time and money developing its customer relationships as well as its talent and employees who help Acrisure's customers address their unique needs and further their business relationships with Acrisure (*id.* ¶ 7).  Acrisure protects its business relationships by obtaining from employees with important roles agreements with reasonable restrictions in the form of non-competition and non-solicitation provisions, among others (*id.* ¶ 11).

On August 1, 2020, Papazyan sold GIA to Acrisure for millions of dollars and became an Acrisure employee in Glendale, California, working in Acrisure West's Transportation Group (*id.* ¶¶ 16, 24).  Papazyan, who was represented by legal counsel, entered into two agreements:  an Asset Purchase Agreement (the "APA," ECF Nos. 65-1 & 52-1) and an Employee Agreement (the "EA," ECF Nos. 65-2 & 52-2).  In both agreements,  Papazyan agreed to not directly or indirectly "engage in a Competitive Activity," which is defined as "engag[ing], directly or indirectly, in any capacity that is the same, similar, or in any way related to the capacity in which [Papazyan] was employed by [Acrisure] . . . or otherwise in any way participat[ing] in or becom[ing] associated with, any other business organization that, at any time, conducts business relating to insurance brokerages or other related business conducted by [Acrisure], in each case now or at any time

2

during the Employment Period" (APA § 5.1(b)(i) & (v); EA § 13(b)(i) & (v)).  Papazyan also agreed to customer and employee non-solicitation covenants in both agreements (APA § 5.1(b)(iii); EA § 13(b)(iii)).

Regarding the duration of the restrictive covenants, Papazyan agreed that the Non-Compete Covenant would remain in effect for "the longer of (a) the five (5) year period immediately following the Effective Date [of the Asset Purchase Agreement] and (b) the one (1) year period immediately following the date on which [Papazyan] and his Affiliates (as defined in the Stockholders Agreement) cease to hold any equity securities of [Acrisure]" (APA § 5.1(b)).  While the five-year period has concluded, Papazyan currently holds Acrisure Holdings equity (Schutt Decl. ¶ 28).

Papazyan agreed that the covenants in the Employment Agreement would remain in force for three years following his termination and applied "in any State in the United States that [Acrisure], or any of its subsidiaries, is conducting such business at the time of termination of [Papazyan's] employment or has notified [Papazyan] that it proposed to conduct such business and for which [Acrisure] has, prior to the time of such termination, expended substantial resources" (EA § 13(v)).  Papazyan agreed to provide "at least forty-five (45) days' prior written notice" before terminating his employment with Acrisure (EA § 8(a)(i)).

Since 2020, Papazyan reported to Patrick Thomas (Papazyan Dep. at 105).  In January 2024, Papazyan was promoted to Senior Vice President of the Transportation division in California.  Papazyan was responsible for, among other things, managing, soliciting, and selling customers in the transportation industry various insurance products and services, as well as providing related services to and developing goodwill with Acrisure customers (Schutt Decl. ¶ 25).

3

As Papazyan acknowledged in the Employment Agreement, he had access to, and made use of, Acrisure's proprietary and confidential information (*id.* ¶ 26).

On April 9, 2026, Papazyan sent a one-sentence email to Thomas and another Acrisure employee, indicating: "Effective immediately please accept my resignation." (Schutt Decl. ¶ 29; Papazyan Resignation Email [Pl. Ex. 4, ECF No. 8-4]).  Thomas also resigned that same day (Schutt Decl. ¶ 31).  Thomas went to work for Howden, which is headquartered in London, leading its transportation division in Orange County California, a director competitor of Acrisure (Schutt Decl. ¶ 31; "The Insurer" article, Pl. Ex. 6 [ECF No. 36-6]).  Howden also hired Papazyan as a "Producer" (Schutt Decl. ¶ 33; Clark Decl. [ECF No. 64] ¶ 9; 4/9/2026 Howden–Papazyan Employment Agreement, Pl. Ex. 26 [ECF No. 66-6]).  Indeed, Howden purportedly conducted a full "Team Lift Out," taking 25 Acrisure employees (Schutt Decl. ¶ 37; Papazyan Dep. at 108; "The Insurer" article, Pl. Ex. 6 [ECF No. 36-6]).  Acrisure immediately severed Papazyan's email and seized his laptop and sent him a letter the next day "confirm[ing] his notice of termination" (Papazyan Decl. ¶ 6).  According to Acrisure, "at least five" customers to whom Papazyan provided services have since requested that their broker of record be changed from Acrisure to a "competitor" (Schutt Decl. ¶ 39).

On April 13, 2026, Papazyan filed an anticipatory declaratory judgment action in California state court to invalidate his employment covenants, an action that Acrisure removed to federal court.  *See Papazyan v. Acrisure of California, LLC et al.*, 2:26-cv-04714 (C.D. Calif.).

### B.  Procedural Posture

On April 14, 2026, Acrisure initiated this litigation, alleging the following seven claims:

    I.    Breach of Employment Agreement—Injunctive Relief: Non-Competition Covenant

    II.    Breach of Employment Agreement—Injunctive Relief: Business Non-Solicitation Covenants

III.     Breach of Employment Agreement—Injunctive Relief: Employee Non-Solicitation Covenant

IV.     Breach of Asset Purchase Agreement—Injunctive Relief: Non-Competition Covenant

V.      Breach of Asset Purchase Agreement—Injunctive Relief: Business Non-Solicitation Covenants

VI.     Breach of Asset Purchase Agreement—Injunctive Relief: Employee Non-Solicitation Covenant

VII.    Declaratory Judgment pursuant to 28 U.S.C. §§ 2201, 2202: Employment Agreement

On April 27, 2026, pursuant to Federal Rule of Civil Procedure 65, Acrisure filed a Motion for Temporary Restraining Order, which this Court granted for a period of 14 days (TRO, ECF No. 23), restraining Papazyan and "all persons in active concert or participation with him" from "directly or indirectly" engaging in any "Competitive Activity" (ECF No. 23).  This Court denied Papazyan's motion to dissolve the TRO, granted limited expedited discovery, and extended the TRO for an additional 14 days (Orders, ECF Nos. 42, 44, & 46).  On May 4, 2026, Acrisure filed a Motion for a Preliminary Injunction (ECF No. 37), which has been fully briefed and is noticed for oral argument on May 26, 2026 (Order, ECF No. 116).  Additionally, Papazyan has filed a Motion to Dismiss, which has been fully briefed (ECF Nos. 19, 45, & 108).  As noted, Howden's motion to intervene was filed on May 16, 2026 and was fully briefed on May 19, 2026.

### C.  Additional Pending Litigation

Howden has two other cases pending:

- First, on May 7, 2026, Howden and Thomas sued Acrisure in California on May 7, 2026 for using purportedly void restrictive covenants to unfairly compete (ECF No. 79 at PageID.1252, referencing *Howden US Servs., LLC, et al. v. Acrisure of Calif., LLC*, No. 30-2026-01568888-CU-OE-CJC (Cal. Super. Ct. May 7, 2026) (hereinafter, the "Orange County Complaint"); Orange Cnty. Compl., ECF No. 74-2).

- Second, on May 12, 2026, Acrisure filed suit against Howden and a Howden affiliate in Michigan (ECF No. 79 at PageID.1252, referencing *Acrisure, LLC v. Howden US Servs. LLC*, No. 26-20711-CBB (Mich. Cir. Ct.) (hereinafter, the "Kent County Complaint")).

## II.  ANALYSIS

Federal Rule of Civil Procedure 24 governs intervention by non-parties to an action in federal court.  Rule 24(a) addresses "Intervention of Right," and Rule 24(b) addresses "Permissive Intervention."   Howden moves as a proposed intervenor as of right under Rule 24(a)(2) or, alternatively, by permission under Rule 24(b), to participate as an intervening defendant against Acrisure.

### A.  Intervention as of Right

In support of intervention as of right, Howden first argues that (1) its motion is timely filed in this case, which is in its infancy; (2) its legal interest in this case, as Papazyan's new employer, is substantial; and (3) Howden's ability to protect its interest absent intervention is impaired where Papazyan cannot adequately represent Howden's broader interests, which include Howden's "ability to employ individuals other than Papazyan" and to "grow its business in ways unrelated to Papazyan that could be stifled by the requested injunctive relief" (ECF No. 74 at PageID.1062–1066).

In response, Acrisure argues that (1) Howden's motion, filed ten days after the Court issued the TRO is not timely, given the rapid pace with which this case has progressed and Howden's prior knowledge of Papazyan's restrictive covenants; (2) Howden is not a real-party-in-interest to the contract claims in this case; and (3) Howden has at least two other options for protecting its alleged interests (ECF No. 79 at PageID.1253–1260).

Intervention of right must be denied.

Rule 24(a)(2) of the Federal Rules of Civil Procedure provides that "[o]n timely motion, the court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  To succeed on such a motion, the movant must demonstrate that: "1) the [motion] was timely filed; 2) the [movant] possesses a substantial legal interest in the case; 3) the [movant's] ability to protect its interest will be impaired without intervention; and 4) the existing parties will not adequately represent the [movant's] interest." *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011).  "Each of these elements is mandatory, and therefore failure to satisfy any one of the elements will defeat intervention under the Rule." *Id.  See also Cahoo v. SAS Inst., Inc.*, 71 F.4th 401, 412 (6th Cir. 2023) (reiterating the same standard).  The Court determines that Howden has not satisfied all four elements necessary for intervention of right.

***Timeliness.***  Timeliness, the "threshold issue," splits into the following five component parts: (1) the stage of the litigation, (2) the intervenor's purpose, (3) the length of time that the intervenor knew about her interest, (4) prejudice to the original parties, and (5) unusual circumstances. *Cahoo*, 71 F.4th at 412.  "No one factor is dispositive, but rather the determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances." *Blount-Hill*, 636 F.3d at 284 (quotation omitted).  The assessment of timeliness is a matter within the sound discretion of the trial court. *Cahoo*, 71 F.4th at 413.  *See also United States v. Tennessee*, 260 F.3d 587, 592 (6th Cir. 2001) ("A district court's denial of intervention as of right is reviewed de novo, except for the timeliness element, which is reviewed for an abuse of discretion.").

While the *age* of this case would seemingly tip in Howden's favor, the stage of the litigation does not. In assessing timeliness under Rule 24(a), the "critical factor is what steps [have] occurred along the litigation continuum." *Stupak-Thrall v. Glickman*, 226 F.3d 467, 475 (6th Cir. 2000). Here, the pace of the litigation has been rapid, as demonstrated by the more than 120 docket entries, and counting. In less than six weeks, in response to the flurry of motions, the Court has, to date, entered nineteen orders (ECF Nos. 7, 13, 23, 24, 31, 42, 44, 46, 49, 59, 63, 68, 72, 85, 86, 96, 97, 111, & 123). This Court entered a TRO, declined to dissolve the TRO, extended the TRO, and was recently requested to clarify the TRO. The parties have conducted limited discovery, including Papazyan's deposition, and fully briefed a motion for a preliminary injunction, as well as a motion to dismiss. The numerous steps already taken weigh against a finding of timely intervention.

Howden's stated purpose—to "protect itself" from Acrisure's preliminary-injunction motion (ECF No. 74 at PageID.1057, 1063)—also weighs against a finding of timely intervention. The fact that Acrisure's preliminary-injunction motion may "affect[] Howden's interests" (ECF No. 74 at PageID.1063) is an insufficient showing, as discussed in further detail, *infra*.

The length of time that Howden knew about its interest also squarely tips in Acrisure's favor. "An entity that is aware that its interests may be impaired by the outcome of the litigation is obligated to seek intervention *as soon as it is reasonably apparent* that it is entitled to intervene." *Tennessee*, 260 F.3d at 594 (emphasis added). Howden reasonably had notice of any purported interest in this case as early as April 14, when the case was filed, or, at the latest, on April 27, when this Court issued the TRO. Indeed, as Acrisure aptly points out, Howden, which is paying Papazyan's legal fees, knew of the underlying dispute long before Acrisure even filed this case because Howden had a copy of Papazyan's restrictive covenants in March before hiring him, and

8

Papazyan filed an anticipatory suit against Acrisure in California. *See* Papazyan Dep. [ECF No. 81-20] at 8; Howden–Papazyan EA [ECF No. 66-6] § 10 (Indemnification).

Last, as to prejudice to the original parties and unusual circumstances, the Court determines that the ten-day delay between the Court's entry of a temporary restraining order and Howden's motion to intervene is a particularly acute delay in the context of the pending preliminary injunction motion, which involves an inflexible fourteen- to twenty-eight day timeline. *See* FED. R. CIV. P. 65(b)(2) ("The [temporary restraining] order expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension."); *Fetch! Pet Care, Inc. v. Atomic Pawz Inc.*, 170 F.4th 546, 554 (6th Cir. 2026) (noting that a "hearing for preliminary injunction is generally a restricted proceeding, often conducted under pressured time constraints, on limited evidence and expedited briefing schedules."). Given the unique procedural posture of this case, the filing of the motion to intervene, while the parties were already briefing the preliminary injunction motion on this expedited timeline, is untimely.

In sum, having considered all five components of the timeliness inquiry as applied to the specific facts of this case, including the necessarily expedited nature of the proceedings, the Court, in its discretion, determines that Howden's motion to intervene is not timely.

***Substantial Legal Interest.*** Turning to the next Rule 24(a) element, the proposed intervenor's legal interest, the Sixth Circuit has held that the substantiality of the claimed legal interest "depends on countervailing considerations." *Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula, Mich.*, 41 F.4th 767, 771 (6th Cir. 2022). The broad construction in favor of intervention, *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991), while expansive, "does not mean that any articulated interest will do," *Wineries*, 41 F.4th at 772 (quoting *Coal. to Def.*

*Affirmative Action v. Granholm*, 501 F.3d 775, 780 (6th Cir. 2007)).  "Instead, '[t]he interest must be significantly protectable' to rise to the level of substantial." *Id.* (quoting *Grubbs v. Norris*, 870 F.2d 343, 346 (6th Cir. 1989)) (alteration in original).  Specifically, the proposed intervenor must establish itself as a "real party in interest in the transaction which is the subject of the proceeding." *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 317 (6th Cir. 2005).

The seven claims presented in Papazyan's Complaint arise from the contractual obligations between Acrisure and Papazyan, and, as Acrisure emphasizes, "Howden is a stranger to both" (ECF No. 79 at PageID.1257).  Howden is not named in Acrisure's Complaint, and Acrisure does not allege a scheme between Papazyan and Howden.  Any impact on Howden would be, at most, the incidental consequence of Papazyan's alleged noncompliance with his contractual obligations. The Court is not convinced that the concerns Howden presents establish it as a "real party in interest" in the 2020 transaction between Papazyan and Acrisure.

Howden asserts that Acrisure's proposed preliminary injunction enjoining Papazyan's Competitive Activity may "affect[] Howden's interests" (ECF No. 74 at PageID.1063). Conversely, Papazyan represents that he is on a leave of absence from his position at Howden (Papazyan Dep. at 89, 100, 106; Papazyan Decl. [ECF No. 52] ¶ 8).  Whatever the current or future status of Papazyan's employment relationship with Howden, Howden's generalized interests do not support a claim for intervention of right, under Sixth Circuit precedent.[1]  *See Providence*, 425

---

[1] Howden references the decisions of two district courts in support of its motion (ECF No. 74 at PageID.1065).  The cases are not binding on this Court.  Additionally, the cases are factually distinguishable inasmuch as the successful intervenors therein alleged specific interests, not generalized assertions of potential harm.  *See Nutrien AG Sols., Inc. v. Anderson*, 2024 WL 4843967, at *3 (E.D. Tenn. Nov. 20, 2024) (where the intervenor argued that an injunction preventing an individual from working for the intervenor would undermine its recent $15 million "geographic and market share expansion project"); *INVESCO Inst. (N.A.), Inc. v. Paas*, 2008 WL 4858210, at *6–7 (W.D. Ky. Nov. 7, 2008) (where the intervenor argued that a proposed injunction would enjoin the intervenor's "development and use of DB's Alpha Workbench software and other

F.3d at 317 (concluding that the proposed intervenor's interest in the negotiated settlement was "so generalized [that] it will not support a claim for intervention of right"); *United States v. Michigan*, 424 F.3d 438, 444 (6th Cir. 2005) ("Rather than identifying any weakness in the state's representation in the current phase of the proceedings, the proposed intervenors seem more concerned about what will transpire *in the future* should the district court determine that the Tribes' inland treaty rights continue to exist.... While the proposed intervenors may be legitimately concerned about these future issues, they are not now, and possibly never will be, before the district court.") (emphasis in original); *Tennessee*, 260 F.3d at 593 (rejecting as "not compelling" the proposed intervenor's speculative claim that the case will "directly implicate the scope, quality, timing and funding of services to be performed by CMRA members"); *Blount-Hill*, 195 F. App'x at 484, 486 (affirming denial of intervention to a company that was "not a party to any challenged contract nor . . . directly targeted by plaintiffs' complaint" because its sole interest was "concededly economic").

Howden opines that the language of this Court's TRO—binding those working "in concert and active participation" with Papazyan (ECF No. 23)—"uniquely" encompasses Howden (ECF No. 74 at PageID.1059–1060; ECF No. 102 at PageID.1638–1639). And Howden argues that through its motion for a preliminary injunction, Acrisure again seeks a "vague and overbroad order" (ECF No. 102 at PageID.1635). Howden's argument is misplaced. The language the Court included in the TRO is drawn directly from Federal Rule of Civil Procedure 65(d)(2) (Persons Bound): "The order binds only the following who receive actual notice of it by personal service

---

software tools"). As the Sixth Circuit has long instructed, "[t]he inquiry into the substantiality of the claimed interest is necessarily fact-specific." *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) (citation omitted); *see also Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 780 (6th Cir. 2007) ("[E]stablishing a substantial legal interest 'is necessarily fact-specific.'") (citation omitted).

or otherwise: (A) the parties; (B) the parties; officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)."  It is language that this Court routinely includes in the contents of TROs and preliminary injunctions.

Indeed, Howden's reliance on the language from Rule 65 demonstrates no more than the fact that Howden falls within a general category of "Persons Bound," i.e., a generalized, commercial interest that, as Acrisure points out, is an interest shared by any one of Acrisure's many competitors who might seek to assist Papazyan in breaching his restrictive covenants with Acrisure (ECF No. 106 at PageID.1696).  An "interest so generalized will not support a claim for intervention as of right."  *Coal. to Defend Affirmative Action*, 501 F.3d at 782 (citation omitted) (holding that the proposed intervenor's interest, which was "shared by the entire Michigan citizenry," did "not support a claim for intervention as of right"); *cf. Grutter v. Bollinger*, 188 F.3d 394, 398–99 (6th Cir. 1999) (holding that organization had substantial legal interest because interest was greater than that of general public); *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1246–47 (6th Cir. 1997) (same).

In short, intervention, with its corresponding entitlement to party status, discovery, and appellate rights, requires more than an interest of an indefinite or generalized character.  Therefore, the Court concludes that Howden has not demonstrated a substantial legal interest for purposes of Rule 24(a) intervention.

***Ability to Protect Legal Interest Absent Intervention.***  The Sixth Circuit has acknowledged that the burden to satisfy the next element is generally "minimal," requiring a showing only that "disposition of the present action would put the movant at a practical disadvantage in protecting its interest."  *Grainger v. Ottawa Cnty., Michigan*, 90 F.4th 507, 515–16 (6th Cir. 2024).  However,

as with the substantial legal interest requirement, this generous treatment does not render the impairment prong "a dead letter," particularly where proposed intervenors may be affected by an order in the underlying litigation but "could press their claims in separate litigation." *Id.* (collecting cases for the proposition that intervention of right is not required when it would only prevent litigants from facing the inconvenience of litigating their claims elsewhere).

Here, even assuming Howden's application is timely and in pursuit of a substantial interest, Howden has not demonstrated that its legal interest would be impaired absent intervention in this case.  Rather, Howden can adequately protect its interest through several other avenues, to wit:  its own lawsuit against Acrisure in California ("the Orange County Complaint") and/or Acrisure's lawsuit against it in Michigan ("the Kent County Complaint").  Howden may utilize either, or both, of these other avenues to assert and defend its alleged interest in employing other former Acrisure employees bound by enforceable restrictive covenants.  The Court need not permit intervention in *this* case for it to do so.  *See, e.g.*, *Grainger*, 90 F.4th at 517 (finding no impairment where the proposed intervenor "could have filed his own class action rather than seeking to intervene in this litigation"); *Tennessee*, 260 F.3d at 595–96 (finding no impairment where the proposed intervenor could "protect its economic interests … in state courts by suing to enforce its contractual rights"). This Rule 24(a)(2) element is not satisfied.

***Adequate Representation.***  Last, "[a]pplicants for intervention bear the burden of proving that they are inadequately represented by a party to the suit." *Meyer Goldberg, Inc. v. Goldberg*, 717 F.2d 290, 293 (6th Cir. 1983).  This burden has been described as minimal because it need only be shown that there is a "potential" for inadequate representation. *Grutter*, 188 F.3d at 400. However, when, as here, the proposed intervenor and party to the suit currently share the "same ultimate objective," a presumption of adequate representation arises. *Wineries*, 41 F.4th at 774.

13

The Sixth Circuit recently discussed this presumption, instructing that it may be enough for applicants for intervention to (1) "show that the existing party ... will not make all of the prospective intervenor's arguments," (2) demonstrate "collusion ... between the existing party and the opposition," or (3) "show that the existing party has 'interests adverse to the interven[o]r[.]'" *Lucas Cnty. Bd. of Commissioners v. United States Env't Prot. Agency*, 169 F.4th 689, 697 (6th Cir. 2026) (citation omitted).  The Sixth Circuit explained that application of the presumption recognizes that a movant who seeks the same litigation outcome as an existing party may nevertheless be inadequately represented if the movant can demonstrate that the parties are "animated by different, and possibly conflicting, concerns." *Id.* at 698 (permitting intervention for the associations, whose proposed arguments conflicted with the defendant's position, but not for the coalition, because its arguments fell "outside the scope of this case" or could be adequately raised by the existing defendant).

Even assuming Howden's application is timely and in pursuit of a substantial interest that it has no other way to protect, Howden has not demonstrated that Papazyan will not adequately protect that interest.  As set forth, Howden's arguments fall outside the scope of this case and would inject claims and defenses untethered to Papazyan's contracts with Acrisure, expanding a two-party proceeding into a multi-party dispute.  Howden does not (nor could it credibly) assert any collusion between Papazyan and Acrisure.  And Howden does not assert that Papazyan has interests adverse to Howden.  This Rule 24(a)(2) element is also not satisfied.

Again, if even a single element is missing, Howden cannot intervene as of right.  *See Albright*, 2024 WL 1114606, at *2 (citation omitted); *Blount-Hill*, 636 F.3d at 283.  Given Howden's failure to satisfy any one of these mandatory elements, the Court determines that its request for intervention under Rule 24(a)(2) must be denied.

14

### B.  Permissive Intervention

Alternatively, Howden argues under Rule 24(b)(1)(B) that it is entitled to permissive intervention because the motion is timely, issues common to both Howden and Papazyan "abound," and neither Acrisure nor Papazyan will suffer undue delay or prejudice from Howden's intervention (ECF No. 74 at PageID.1067–1068).

In response, Acrisure reiterates that Howden's motion is untimely and argues that the request for permissive intervention fails because (1) Howden's positions merely mirror Papazyan's, and (2) permitting intervention would unduly delay and prejudice the proceedings (ECF No. 79 at PageID.1261–1262).

Permissive intervention is properly denied.

Rule 24(b)(1) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[o]n timely motion, the court may permit anyone to intervene who … (B) has a claim or defense that shares with the main action a common question of law or fact."  "Resolution of a motion for permissive intervention is committed to the discretion of the court before which intervention is sought[.]"  *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 278–79 (2022).  Indeed, the Sixth Circuit has held that "[t]he district court retains broad discretion to exclude additional parties—even parties presenting common questions of law or fact—based on the totality of the circumstances."  *Buck v. Gordon*, 959 F.3d 219, 226 (6th Cir. 2020).

"In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  FED. R. CIV. P. 24(b)(3).  Further, "[d]istrict courts can consider [the mandatory intervention] factors when evaluating permissive intervention motions."  *Bay Mills Indian Cmty. v. Snyder*, 720 F. App'x 754, 759 (6th Cir. 2018).  The basis for the court's decision must either be "obvious in light of the record" or

provide enough of an explanation to enable meaningful review.  *Kirsch v. Dean*, 733 F. App'x 268, 279 (6th Cir. 2018) (quoting *Miller*, 103 F.3d at 1248).

Here, as previously set forth, Howden's motion to intervene is untimely filed.  *See Cahoo*, 71 F.4th at 412 (applying same five-component timeliness framework to permissive intervention). Additionally, as previously set forth, Howden has not one, but two, other litigation avenues for addressing its claims and concerns.  Denial of permissive intervention is warranted where, as here, a proposed intervenor has "other adequate means of asserting [its] rights."  *Head v. Jellico Housing Authority*, 870 F.2d 1117, 1124 (6th Cir. 1989).  *See also Albright v. Ascension Michigan*, No. 23-1595, 2024 WL 1114606, at *3 (6th Cir. Mar. 14, 2024) (affirming this Court's denial of permissive intervention where the proposed intervenor had another adequate means of asserting his rights in the Southern District of Indiana).

Moreover, permissive intervention will not serve judicial economy but will result in undue delay and prejudice to the existing parties.  Adding Howden as a defendant, even if it submits joint filings, realistically portends more discovery and more motions, and therefore more time and resources expended before a timely resolution of the discrete contract issues between Acrisure and Papazyan in this case can be reached.[2]  Within the context of intervention on appeal, the Sixth Circuit has observed that "[a]llowing intervenors to present particular defenses on the merits to judiciable claims is different than allowing intervenors to change the procedural course of litigation

---

[2] The Court notes that while Acrisure raised the prospect of Howden participating as amicus in this case in its response, Howden did not address that option in its reply.  *See* ECF No. 102.  Howden's omission strengthens the Court's impression that, like the proposed intervenors in *Stupak-Thrall v. Glickman*, 226 F.3d 467, 477 (6th Cir. 2000), Howden seeks to participate as a defendant in this case (instead of "only" as amici curiae) to dictate litigation strategy, including the filing of "other appropriate motions throughout the action."  *See* ECF No. 74 at PageID.1048, 1057.  But "Rule 24(a)(2) doesn't permit intervention simply because the movant wants to 'file motions and appeals rather than merely amicus briefs.'"  *United States v. Michigan*, 68 F.4th 1021, 27 (6th Cir. 2023) (citation omitted).

by virtue of their intervention." *Equal Emp. Opportunity Comm'n v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 584 (6th Cir. 2018), aff'd sub nom. *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020).

On balance, the totality of the circumstances do not favor permissive intervention. Therefore, in its discretion, the Court denies Howden's alternative request for permissive intervention.

### C. Amicus Curiae

The Court will, however, treat Howden's proposed response in opposition to the motion for a preliminary injunction (ECF No. 77) as an amicus brief and accept it for docketing as such. Howden's written submission affords ample opportunity to provide the Court with "both meaningful and adequate" input. *See Stupak-Thrall*, 226 F.3d at 477; *Brewer v. Republic Steel Corp.*, 513 F.2d 1222, 1225 (6th Cir. 1975) (recommending that the proposed intervenors participate as amici curiae); *see also South Carolina v. North Carolina*, 558 U.S. 256, 288 (2010) (Roberts, C.J., concurring in part) ("[c]ourts often treat amicus participation as an alternative to intervention"). Additionally, Howden is not precluded from seeking leave to file an amicus brief in future dispositive motion briefing by the parties to this case. *See* W.D. Mich. LCivR 5.7(f) (requiring a proposed document to be attached as an exhibit to the motion seeking leave to file).

### III.  CONCLUSION

Therefore:

**IT IS HEREBY ORDERED** that Howden US Services, LLC's Motion to Intervene (ECF No. 73) is DENIED.

**IT IS FURTHER ORDERED** that the Court will treat Howden's proposed response in opposition to the motion for a preliminary injunction (ECF No. 77) as the brief of an amicus curiae, and the Clerk of Court is directed to accept the brief for docketing as such.

Dated:  May 26, 2026                                    /s/ Jane M. Beckering
                                                        JANE M. BECKERING
                                                        United States District Judge