UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ACRISURE OF CALIFORNIA, LLC,

     Plaintiff,

                              Case No. 1:26-cv-1213

v.

                              HON. JANE M. BECKERING

HAKOP PAPAZYAN,

     Defendant.

_____/

## OPINION AND ORDER

This recently filed diversity case concerns Defendant Hakop Papazyan (Papazyan)'s alleged violations of certain provisions of his contracts with Plaintiff Acrisure of California, LLC (Acrisure), his former employer. This Court issued a Temporary Restraining Order and now turns to Acrisure's Motion for a Preliminary Injunction (ECF No. 37), which has been fully briefed. In addition to copies of the contracts themselves, the parties supplied the Court with other documentary evidence in support of their positions on the requested injunctive relief, including declarations and Papazyan's deposition testimony. The Court also has the benefit of amicus briefing from Papazyan's new employer, Howden US Services, LLC (Howden). Last, the Court heard oral argument on the motion on May 26, 2026. This Opinion contains the Court's findings of fact and conclusions of law in accordance with the specificity requirement of FED. R. CIV. P. 65(d). For the following reasons, the Court determines, in its discretion, that the overall balancing of the equities warrants the issuance of a Preliminary Injunction during the pendency of this case, or until further Order of the Court. The Court therefore grants Acrisure's motion for a preliminary injunction (ECF No. 37). The Court will also deny as moot Papazyan's pending motion to dismiss

(ECF No. 19) as well as his May 22, 2026 motion seeking clarification of the TRO (ECF No. 124). And the Court will deny as moot Howden's Motion to Quash or Modify Subpoena (ECF No. 87) as well as its Motion for Leave to File a Reply Brief (ECF No. 112).

## I. BACKGROUND

### A. Factual Background

**1.     <u>The Contracts at Issue</u>**

Papazyan, a California resident, along with his brother, owned Gain Insurance Agency (GIA), a California insurance brokerage firm that they co-founded in 2010 (Schutt Decl. [ECF No. 14] ¶ 15; Papazyan Decl. [ECF No. 52] ¶ 1).  Acrisure is an LLC with its principal place of business in Grand Rapids, Michigan (Compl. [ECF No. 1] ¶ 5).  Per its Chief of Staff, Acrisure provides "intelligence-driven financial services solutions" across many industries, including the insurance brokerage industry (Schutt Decl. ¶¶ 5–6).  As part of its business, Acrisure spends significant time and money developing its customer relationships as well as its talent and employees who help Acrisure's customers address their unique needs and further their business relationships with Acrisure (*id.* ¶ 7).  Acrisure protects its business relationships by obtaining from employees with important roles agreements with reasonable restrictions in the form of non-competition and non-solicitation provisions, among others (*id.* ¶ 11).

On August 1, 2020, Papazyan sold GIA to Acrisure for millions of dollars and became an Acrisure employee in Glendale, California, working in Acrisure West's Transportation Group (*id.* ¶¶ 16, 24).  Papazyan, who was represented by legal counsel, entered into two agreements—an Asset Purchase Agreement (the "APA," ECF Nos. 65-1 & 52-1) and an Employee Agreement (the "EA," ECF Nos. 65-2 & 52-2)— following months of negotiation, including active negotiation over the specific provisions at issue in this motion (Papazyan Decl. ¶ 4; Papazyan Dep. [Pl. Ex.

37, ECF No. 81-20] at 63–76; Emails re. Redlined Versions [Pl. Exs. 18–21, ECF Nos. 81-1 through 81-4]).

*Non-Compete & Non-Solicitation Provisions.*  In both agreements, Papazyan agreed to not directly or indirectly "engage in a Competitive Activity" (APA § 5.1(b)(i) & (v); EA § 13(b)(i) & (v)).  "Competitive Activity" is defined as "engag[ing], directly or indirectly, in any capacity that is the same, similar, or in any way related to the capacity in which [Papazyan] was employed by [Acrisure] . . . or otherwise in any way participat[ing] in or becom[ing] associated with, any other business organization that, at any time, conducts business relating to insurance brokerages or other related business conducted by [Acrisure], in each case now or at any time during the Employment Period" (*id.*).  Papazyan also agreed to customer and employee non-solicitation covenants in both agreements (APA § 5.1(b)(iii); EA § 13(b)(iii)).

The geographic scope of the EA's Non-Competition Covenant is limited to the Protected Territory, which is defined as "any State in the United States that Employer, or any of its subsidiaries, is conducting such business at the time of termination of Employee's employment or has notified Employee that it proposed to conduct such business and for which the Employer has, prior to the time of such termination, expended substantial resources" (EA § 13(b)(i)).  The APA's Non-Competition Covenant contains the same geographical restrictions.  *See* APA § 5.1(b)(i) & (v) ("any State in the United States that [Acrisure] or its Affiliates is conducting such business as of the Effective Date [of the Asset Purchase Agreement]" (APA) § 5.1(b)(i) & (v).)).  The scope of the non-solicitation provisions is more widely defined as a "worldwide" restriction.  *See* APA § 5.1(b); EA § 13(b).

Regarding the duration of the restrictive covenants, Papazyan agreed that the Non-Competition Covenant in the APA would remain in effect for "the longer of (a) the five (5) year

period immediately following the Effective Date [of the Asset Purchase Agreement] and (b) the one (1) year period immediately following the date on which [Papazyan] and his Affiliates (as defined in the Stockholders Agreement) cease to hold any equity securities of [Acrisure]" (APA § 5.1(b)).  While the five-year period has concluded, Papazyan currently holds Acrisure Holdings equity (Schutt Decl. ¶ 28).  Papazyan agreed that the covenants in the Employment Agreement would remain in force for three years following his termination and applied "in any State in the United States that [Acrisure], or any of its subsidiaries, is conducting such business at the time of termination of [Papazyan's] employment or has notified [Papazyan] that it proposed to conduct such business and for which [Acrisure] has, prior to the time of such termination, expended substantial resources" (EA § 13(v)).  Papazyan agreed to provide "at least forty-five (45) days' prior written notice" before terminating his employment with Acrisure (EA § 8(a)(i)).

*Governing Law Provision.*  Papazyan agreed that both agreements "shall be governed, construed, interpreted and enforced in accordance with the domestic laws of the State of Michigan, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Michigan or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Michigan" (APA § 7.14; EA § 17(d)).

*Venue Provision.*  Last, Papazyan agreed that all actions arising from or related to the Employment Agreement for which a party seeks injunctive relief "shall be brought only in a state court of competent subject matter jurisdiction in Kent County, Michigan, or in the federal courts of competent subject matter jurisdiction in the Western District of Michigan" (EA § 17(d)). Papazyan agrees that any claims arising out of the APA would be "settled by binding arbitration" in Michigan, but that "[e]ither party may seek any interim or preliminary relief, necessary to

protect its rights or property pending the completion of arbitration, in a court of competent jurisdiction" (APA § 7.14).

**2.      Papazyan's Employment & Resignation**

Since 2020, Papazyan reported to Patrick Thomas (Papazyan Dep. at 105).  In January 2024, Papazyan was promoted to Senior Vice President of the Transportation division in California.  Papazyan was responsible for, among other things, managing, soliciting, and selling customers in the transportation industry various insurance products and services, as well as providing related services to and developing goodwill with Acrisure customers (Schutt Decl. ¶ 25).  As Papazyan acknowledged in the Employment Agreement, he had access to, and made use of, Acrisure's proprietary and confidential information (Schutt Decl. ¶ 26).  Acrisure highly compensated Papazyan.  In 2025, his total compensation from Acrisure was nearly $1 million (*id.* ¶ 27).

On April 9, 2026, Papazyan sent a one-sentence email to Thomas and another Acrisure employee, indicating: "Effective immediately please accept my resignation." (Schutt Decl. ¶ 29; Papazyan Resignation Email [Pl. Ex. 4, ECF No. 8-4]).  Thomas also resigned that same day (Schutt Decl. ¶ 31).  Thomas went to work for Howden, which is headquartered in London, leading its transportation division in Orange County California, a direct competitor of Acrisure (Schutt Decl. ¶ 31; "The Insurer" article, Pl. Ex. 6 [ECF No. 36-6]).  Howden also hired Papazyan as a "Producer" (Schutt Decl. ¶ 33; Clark Decl. [ECF No. 64] ¶ 9; 4/9/2026 Howden–Papazyan Employment Agreement, Pl. Ex. 26 [ECF No. 66-6][1]).  Indeed, Howden purportedly conducted a

---

[1] Papazyan's new employment agreement with Howden includes non-compete and non-solicitation covenants plus a Florida choice-of-law provision and a mandatory Florida forum selection provision (Howden EA [Pl. Ex. F, ECF No. 66-6] §§ 8 & 11).  Papazyan testified that he did not ask Howden for a California choice-of-law provision (Papazyan Dep. at 81).

full "Team Lift Out," taking 25 Acrisure employees (Schutt Decl. ¶ 37; Papazyan Dep. at 108; "The Insurer" article, Pl. Ex. 6 [ECF No. 36-6]).  Acrisure immediately severed Papazyan's email and seized his laptop and sent him a letter the next day "confirm[ing] his notice of termination" (Papazyan Decl. ¶ 6).

According to Acrisure, "at least five" customers to whom Papazyan provided services have since requested that their broker of record be changed from Acrisure to a "competitor" (Schutt Decl. ¶ 39).  Papazyan had conversations with four Acrisure customers about moving their business to Howden, both before and after entry of the TRO, sometimes telling the customers to follow up with a different contact (Thomas and/or "Julie Akin") so that "[he] wouldn't be servicing" the customers:

- Sam/FlyHi Trucking (Papazyan Dep. at 21–29; 4/14/26 Text Messages, Pl. Ex. 27 [ECF No. 81-10]);

- Alfred Gomez/Nirvana (Papazyan Dep. at 31–35; 4/22/26 Text Messages, Pl. Ex. 31 (ECF No. 81-14]);

- Gurpreet/B&B Transport (Papazyan Dep. at 35–41, 110–114; 4/17/26 & 4/28/26 Text Messages, Pl. Exs. 30 & 32 [ECF Nos. 81-13 & 81-15]); and

- Muhammed/ANM Trucking (Papazyan Dep. 41–45, 111; 4/29/26 Text Messages, Pl. Ex. 33 [ECF No. 81-16]).[2]

On April 13, 2026, Papazyan filed an anticipatory declaratory judgment action in California state court to invalidate his employment covenants, i.e., Papazyan filed suit before Acrisure sought to enforce any restrictive covenant.  Acrisure subsequently removed the action to federal court.  *See Papazyan v. Acrisure of California, LLC et al.*, 2:26-cv-04714-JAK-MBK (C.D.

---

[2] The solicitation of customers is the subject of counts other than the claims in Counts I and IV, i.e., it is not the basis for the injunctive relief that Acrisure seeks at bar.

Cal.).  Papazyan indicates that he is on an "unpaid leave of absence" from his employment with

Howden (Papazyan Decl. [ECF No. 52] ¶ 8).

## B.  Procedural Posture

On April 14, 2026, Acrisure initiated this litigation, alleging the following seven claims:

    I.    Breach of Employment Agreement—Injunctive Relief: Non-Competition Covenant

    II.    Breach of Employment Agreement—Injunctive Relief: Business Non-Solicitation Covenants

    III.    Breach of Employment Agreement—Injunctive Relief: Employee Non-Solicitation Covenant

    IV.    Breach of Asset Purchase Agreement—Injunctive Relief: Non-Competition Covenant

    V.    Breach of Asset Purchase Agreement—Injunctive Relief: Business Non-Solicitation Covenants

    VI.    Breach of Asset Purchase Agreement—Injunctive Relief: Employee Non-Solicitation Covenant

    VII.    Declaratory Judgment pursuant to 28 U.S.C. §§ 2201, 2202: Employment Agreement

Papazyan began working for Howden on April 16, 2026 (Papazyan Dep. at 7).  Acrisure

served Papazyan with the Complaint and summons in this case that same day (ECF No. 6).

Counsel for Papazyan filed appearances on April 17, 2026.

On April 27, 2026, pursuant to Federal Rule of Civil Procedure 65, Acrisure filed a Motion

for Temporary Restraining Order, which this Court granted for a period of 14 days (TRO, ECF

No. 23), restraining Papazyan and "all persons in active concert or participation with him" from

"directly or indirectly" engaging in any "Competitive Activity" (ECF No. 23).  This Court

subsequently denied Papazyan's motion to dissolve the TRO (ECF No. 42); granted limited

expedited discovery "pending preliminary injunction proceedings," including service of a

document subpoena on Howden (ECF No. 44); and extended the TRO for an additional 14 days (ECF No. 46).  On May 4, 2026, Acrisure filed a Motion for a Preliminary Injunction (ECF No. 37), which this Court initially noticed for oral argument on May 22, 2026 and re-noticed for May 26, 2026 (Orders, ECF Nos. 46 & 116).

The Court has been thoroughly advised as to the issues presented.  Acrisure supported its motion with a brief (ECF No. 38), the Schutt Declaration (ECF No. 14), and the Corrected Clark Declaration (ECF No. 65, as supplemented by ECF No. 81), with Exhibits 1 through 37 (ECF Nos. 36-1 through 36-17 & ECF Nos. 81-1 through 81-20).[3]  Papazyan filed a response (ECF No. 51); his own declaration (Papazyan Decl., ECF No. 52), with Exhibits A–D (ECF Nos. 52-1 through 52-4); and the declaration of counsel (Patel Decl., ECF No. 53), with Exhibit A (ECF No. 53-1). Acrisure filed a reply to the response (ECF No. 99).  This Court accepted Howden's proposed brief in opposition to a preliminary injunction (ECF No. 77) as an amicus brief.  And, as noted, the Court had the benefit of oral argument.

### C.  Additional Litigation

On May 7, 2026, Howden and Thomas sued Acrisure in California on May 7, 2026 for using purportedly void restrictive covenants to unfairly compete (ECF No. 79 at PageID.1252, referencing *Howden US Servs., LLC, et al. v. Acrisure of Calif., LLC*, No. 30-2026-01568888-CU-OE-CJC (Cal. Super. Ct. May 7, 2026) (hereinafter, the "Orange County Complaint"); Orange Cnty. Compl., ECF No. 74-2).

---

[3] Acrisure indicated, in response to Howden's motion to quash the document subpoena and at oral argument, that the evidentiary record was sufficient to proceeding to resolution of its motion for a preliminary injunction (ECF No. 107 at PageID.1707).

And, on May 12, 2026, Acrisure filed suit against Howden and a Howden affiliate in Michigan (ECF No. 79 at PageID.1252, referencing *Acrisure, LLC v. Howden US Servs. LLC*, No. 26-20711-CBB (Mich. Cir. Ct.) (hereinafter, the "Kent County Complaint")).

## II.  ANALYSIS

### A.  Motion Standard

In a diversity case, the court applies state law to the merits of a claim, and federal law defines the court's power to issue a preliminary injunction. *Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372, 382 (6th Cir. 2023) (affirming this Court's entry of a preliminary injunction). Federal Rule of Civil Procedure 65 provides that a court "may issue a preliminary injunction only on notice to the adverse party." FED. R. CIV. P. 65(a)(1). The balancing process for analyzing requests for temporary and preliminary injunctive relief is not identical, given their different purposes and different evidentiary records, but courts consider "the same [four] factors considered in determining whether to issue a TRO or preliminary injunction." *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). Specifically, in the Sixth Circuit, courts consider "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Ohio v. Becerra*, 87 F.4th 759, 768 (6th Cir. 2023) (quoting *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam) (en banc)). These four factors are not prerequisites that must be met, but interrelated considerations that must be balanced together. *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (citing *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 441 (1974)). The party seeking the preliminary injunction bears the burden of justifying such relief. *Id.*

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981).  In other words, "simply to preserve the status quo.'" *Towerco 2013, LLC v. Berlin Twp. Bd. of Trs.*, 110 F.4th 870, 879–80 (6th Cir. 2024) (citation omitted).  Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id.*  Accordingly, "the findings of fact and conclusions of law made by a court granting the preliminary injunction are not binding at trial on the merits." *Id.  See, e.g., Brown v. Int'l Bhd. of Elec. Workers, Loc. Union No. 58 AFL-CIO*, 936 F.2d 251, 255–56 (6th Cir. 1991) (rejecting the argument that the district court's findings in connection with a motion for preliminary injunction resolved the disputed issue of fact, even if the district court subsequently makes the same findings at trial).

No evidentiary hearing is required where, as here, the court has before it "adequate documentary evidence upon which to base an informed, albeit preliminary, conclusion" that the plaintiff would prevail on the merits.  *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir. 2007); *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 858 (6th Cir. 1992).

Last, Federal Rule of Civil Procedure 65 instructs that "every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  FED. R. CIV. P. 65(d)(1).  The court's order "binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents,

servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." FED. R. CIV. P. 65(d)(2).

## B.  Threshold Jurisdictional Issues

The Court first addresses two subject-matter jurisdiction issues that Papazyan has raised in this case.  "Federal courts are courts of limited jurisdiction ... possess[ing] only that power authorized by the Constitution and statute." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1986).  Hence, the Court has a duty in every case to assure itself that the exercise of subject-matter jurisdiction is proper.  *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009); *see also* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction the court must dismiss the action.").

First, Papazyan claims this Court's jurisdiction is "in question" based on his anticipatory filing in California state court and application of the "first filed" doctrine (ECF No. 51 at PageID.652).  However, the first-to-file doctrine only applies to two cases filed in federal courts of equal rank. *See Certified Restoration*, 511 F.3d at 551.  His filing in state court neither deprives nor places in question the Court's jurisdiction over the subject matter of this case.

Conversely, Papazyan argues in a separately filed motion to dismiss (ECF No. 19) that this Court *has* jurisdiction but should abstain from exercising such in favor of the state court action; however, that argument is moot inasmuch as the state court action was subsequently removed to federal court.  A necessary requirement for application of the *Colorado River*[4] abstention doctrine is the presence of a parallel state proceeding. *Chellman-Shelton v. Glenn*, 197 F. App'x 392, 394 (6th Cir. 2006).  Papazyan concedes as much in his response brief to Acrisure's motion for a

---

[4] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

11

preliminary injunction, asserting that Acrisure removed his anticipatory declaratory judgment action to federal court "specifically to disable the *Colorado River* abstention argument" (ECF No. 51 at PageID.673). Accordingly, the motion to dismiss will be denied as moot.

The Court therefore turns to the multi-factor analysis for issuing a preliminary injunction.

### C. Discussion of Relevant Factors

1.      <u>Likelihood of Success on the Merits</u>

Acrisure's motion for injunctive relief is predicated on the merits of its claims in Counts I and IV, i.e., the Non-Competition Covenants in the parties' contracts. Acrisure argued in briefing and during oral argument that it is likely to succeed on the merits of these claims because Papazyan's conduct in working for a competitor in California breaches the Non-Competition Covenants, which are enforceable under governing Michigan law (ECF No. 38 at PageID.537–546).

In response, Papazyan argued in briefing and during oral argument that Acrisure cannot satisfy this first prong where (1) California law governs this dispute, and every covenant is void under California law; (2) Acrisure lacks supporting evidence; and (3) Acrisure breached the Employment Agreement first, by "forc[ing] a unilateral, immediate termination," instead of permitting the transition period (ECF No. 51 at PageID.653–665).

The first factor weighs in favor of Acrisure.

To satisfy the first factor in the injunction analysis (the "strong likelihood of success on the merits"), the Sixth Circuit has held that "[i]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Abbas*, 60 F.4th at 385 (citation omitted). *See also AtriCure, Inc. v. Jian Meng*, 842 F. App'x 974, 982 (6th Cir. 2021)

(acknowledging that even where a plaintiff satisfies this first factor, "the debate over the evidence's sufficiency [] continue[s] at trial").

    a. *Choice of Law*

To determine whether Acrisure has established a strong likelihood of success on the merits of its breach-of-contract claims, the Court must first determine which state's substantive law applies. "As an ordinary matter of contract interpretation, a federal court sitting in diversity begins with a conflict-of-laws analysis using the law of the State in which it sits to determine the governing law, and then interprets the contract provision under that law." *See Firexo, Inc. v. Firexo Grp.*, 99 F.4th 304, 310 (6th Cir. 2024); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (same). Here, the forum state is Michigan, and this Court looks to Michigan's conflict of law rules to determine the state law that applies.

Courts in Michigan have adopted the approach set forth in the Restatement (Second) of Conflict of Laws, which, in relevant part, provides that "the law of the state chosen by the parties" through a valid choice-of-law provision governs "their contractual rights and duties" unless "(a) the chosen state has no substantial relationship to the parties" or "(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state." Restatement (Second) of Conflict of Laws § 187(2) (1971).

Papazyan argues that the choice-of-law provision to which he agreed would be contrary to a fundamental policy of his home state of California, which imposes arguably greater restrictions on non-competition agreements than does Michigan (ECF No. 51 at PageID.645, 648, 657–660, citing CAL. BUS. & PROF. CODE § 16600.5) (prohibiting employers from attempting "to enforce a contract that is void under this chapter regardless of whether the contract was signed and the employment was maintained outside of California"). Nonetheless, this Court, consistent with its

13

prior decision and other decisions from this district and the Sixth Circuit, concludes that California's interest is not materially greater than the interest of Michigan.  "The simple fact that one state might have greater protections, even significantly greater protections, is not sufficient to find that that state has a materially greater interest than another interested state."  *Viking Grp., Inc. v. Old*, No. 1:22-CV-930, 2023 WL 2730203, at *4 (W.D. Mich. Jan. 18, 2023) (Jonker, J.) (rejecting application of Colorado law).

Hence, the Sixth Circuit and this Court have applied Michigan law in disputes about restrictive covenants involving other states which, like California, disfavor non-competition covenants.  *See*, *e.g.*, *Stone Surgical, LLC v. Stryker Corp.*, 858 F.3d 383, 391 (6th Cir. 2017) (rejecting application of Louisiana law, even though "Louisiana law severely restricts [non-compete agreements]"); *Viking Grp., Inc. v. Grasser*, No. 1:22-CV-933, 2023 WL 4824454 (W.D. Mich. Jan. 19, 2023) (Beckering, J.) (rejecting application of Colorado law, even though  Colorado law "categorically invalidates noncompetition agreements"); *S2 Yachts, Inc. v. ERH Marine Corp.*, 427 F. Supp. 3d 934, 943 (W.D. Mich. 2019) (Jonker, J.) (rejecting application of Dominican Republic law, even though "application of Michigan law would violate fundamental Dominican Republic public policy"); *Stryker Sales Corporation v. McNany*, 2017 WL 3765163, *12 (W.D. Mich. Aug. 31, 2017) (Neff, J.) ("Despite California law and policy prohibiting noncompete agreements, it cannot be said that California has a materially greater interest than Michigan in determining the dispute at issue."); and *Stryker Sales Corporation v. Siroonian*, No. 1:15-cv-1161 (W.D. Mich. Mar. 6, 2017) (ECF No. 177) (Jonker, J.) (conducting a § 187(2) analysis of a California employee with a choice-of-law provision in Michigan and concluding "[a]t a minimum, the interests of California and Michigan are in balance, and this is not enough to displace the parties' chosen law.").  The Court discerns no reason to depart from the reasoning of this long line

14

of cases and no reason to disturb the contracting parties' choice of Michigan law to govern their dispute.

  b. *Application of California Law*

  Even assuming arguendo that California law applied, its application does not compel the result that Papazyan seeks, for two independent reasons.

  First, the plain language of California Labor Code § 925, read as a whole, supports enforcing the forum selection clause in this case.  California Labor Code § 925, which became effective January 1, 2017, provides, in relevant part, that "[a]n employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would … (1) [r]equire the employee to adjudicate outside of California a claim arising in California [or] (2) [d]eprive the employee of the substantive protection of California law with respect to a controversy arising in California."  CAL. LAB. CODE § 925(a)(1)–(2). However, subsection (e) instructs that "[t]his section shall *not* apply to a contract with an employee who is in fact individually represented by legal counsel in negotiating the terms of an agreement to designate either the venue or forum in which a controversy arising from the employment contract may be adjudicated or the choice of law to be applied."  CAL. LAB. CODE § 925(e) (emphasis added).  As one California court explained, the exception created by the California Legislature "makes sense because highly paid executives represented by counsel, like Plaintiff, have sufficient bargaining power to resist overreaching by unscrupulous employers."  *Hawley v. Endava PLC*, No. 8:25-CV-00406-KES, 2025 WL 2633104 (C.D. Cal. Aug. 21, 2025).  *See also EpicentRx, Inc. v. Superior Ct.*, 18 Cal. 5th 58, 77–78, 572 P.3d 1, 13 (2025) (recognizing that agreements negotiated with the benefit of counsel are an express exception to the general rule that employment

agreements with California-based employees cannot designate out-of-state forums or governing law).

The present record in this case indicates that during negotiations of the agreements at bar, counsel for Papazyan specifically and unsuccessfully negotiated for California law to apply. *See* Papazyan Dep. at 63; Emails re. negotiations, Pl. Exs. 18–21 (ECF No. 81-1 through 81-4). In its supporting brief to this Court, Acrisure thoroughly briefed the application of California Labor Code § 925(e) (ECF No. 38 at PageID.539–540), but Papazyan did not substantively address the topic in his response other than to reference a case that was decided *before* the statutory section at issue was made effective (ECF No. 51 at PageID.651, citing *Verdugo v. Alliantgroup, L.P.*, 237 Cal. App. 4th 141, 144–45 (2015)).

Second, California's Business and Professional Code § 16601 expressly "allows enforcement of non-competition covenants that are ancillary to the sale of a business or disposition of ownership interest in the business." Acrisure argues that the APA itself is "unquestionably" related to the sale of Papazyan's business and that the EA is ancillary to that sale, thus falling within the purview of the § 16601 exception (ECF No. 99 at PageID.1573–1574). Relying on a nonbinding "Minute Order" of a California state court addressing a different sale,[5] Papazyan argues to the contrary in the brief submitted to this Court (ECF No. 51 at PageID.646–660). However, the EA expressly provides that "[a]s a condition to Closing under the Purchase Agreement, Employer and Employee agreed to enter into this [Employment] Agreement, including but not limited to Employee's covenants set forth in Section 13" (EA § B [ECF No. 52-2 at PageID.690; ECF No. 65-2 at PageID.902]). And Papazyan himself testified that the agreements

---

[5] *Tucker v. Acrisure*, Case No. 37-2023-00052326-CU-BT-NC (Calif. Sup. Ct. Sep. 20, 2024) (ECF No. 17-3).

were not separately negotiated; rather, "everything" in the APA and EA "had to be agreed upon" and "signed at the same time"—"*it was all as one*" (Papazyan Dep. at 71) (emphasis added).

In short, while California law may have added some protections for some employees, California law does not compel the result that Papazyan seeks in this case, on his particular facts, even if California law properly applied—which it does not.

c. *Breach-of-Contract Elements*

Turning then to the merits of Acrisure's claims in Counts I and IV, a party claiming breach of contract under Michigan law must show "(1) that there was a contract, (2) that the other party breached the contract, and (3) that the party asserting breach of contract suffered damages as a result of the breach." *Total Quality, Inc. v. Fewless*, 958 N.W.2d 294, 302 (Mich. Ct. App. 2020). At issue is the enforceability of the Non-Competition Covenants to which Papazyan agreed. Non-competition covenants are enforceable under Michigan law if "the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business." MICH. COMP. LAWS § 445.774a(a)(1).

Regarding duration, as this Court has previously set forth, Michigan courts have not provided any bright line rules about how long a noncompete can reasonably last, but they have upheld restrictive covenants with durations between six months and five years. *Viking Grp.*, 2023 WL 2730203, at *4 (collecting cases therein). Papazyan's three-year restrictive covenants are of a reasonable duration.

Turning next to geographical area, courts have also upheld non-competition covenants with unlimited geographic scope under Michigan law. The geographic scope of Papazyan's Non-Competition Covenants is limited to those states in which Acrisure is doing business, and, as such, is reasonably tied to its legitimate business interests. *See*, *e.g.*, *Lowry Comput. Prods., Inc. v.*

17

*Head*, 984 F. Supp. 1111, 1116 (E.D. Mich. 1997) (holding that a non-compete agreement with an "unlimited geographic scope" was reasonable when the plaintiff did business in 48 states and internationally); and *Superior Consulting Co., Inc, v. Walling*, 851 F. Supp. 839, 847 (E.D. Mich. 1994) (holding that a non-competition "agreement can be reasonable if the employer actually has legitimate business interests throughout the world" and holding a noncompete with unlimited geographic scope reasonable when the plaintiff did business in forty-three states and internationally).

Last, in addition to a reasonable scope and duration, "the employer's business interest justifying such a restrictive order must be greater than mere competition.  In order to be reasonable, a restrictive covenant must protect against the employee's gaining some unfair advantage in competition with his employer, but not prohibit the employee's future use of general knowledge or skill."  *United Rentals (N. Am.), Inc. v. Keizer*, 202 F. Supp. 2d 727, 740 (W.D. Mich. 2002). Papazyan is prohibited from only "Competitive Activity," which is defined as "engag[ing], directly or indirectly, in any capacity that is the same, similar, or in any way related to the capacity in which [Papazyan] was employed by [Acrisure]" (APA § 5.1(b)(i) & (v); EA § 13(b)(i) & (v)).

Papazyan's argument that the APA Non-Competition Covenant's Tail Period is unenforceable because it is tethered to his divestment of his Acrisure stock does not compel a different conclusion.  Papazyan admits that he could have sold—and could still sell—his shares via Acrisure's stock program but is "choosing" not to sell his stock because he thinks his Acrisure stock (which is worth millions) is worth more than Acrisure's valuation (Papazyan Dep. at 15–16, 109).  Additionally, he admits that he could, at any time, transfer his stock to family members, as he did in April 2026 (Papazyan Dep. at 17–18; *see also* 4/1/26 Email re. Stock Transfer, Pl. Ex. 25 [ECF No. 81-8]).

Papazyan's remaining argument that Acrisure is unlikely to succeed on its claims in Counts I and IV because Acrisure purportedly first breached the EA is likewise unavailing.  Papazyan's argument in this regard is that Acrisure "promised a 45-day notice period in the Employment Agreement, a period Papazyan intended to honor, [then] unilateral[ly] [and] immediate[ly] terminat[ed]" his employment and "simultaneously accuse[d] Papazyan of violating his 45-day notice obligation" (ECF No. 51 at PageID.664–665).  There are no pending counterclaims in this case, and, as Acrisure points out in reply, there is no evidence in the current record to support the proposition that Papazyan intended "effective immediately" to mean "with 45-days' notice" (ECF No. 99 at PageID.1577).

In sum, on this record, the Court determines as a preliminary matter that the Non-Competition Covenants are reasonable in scope, duration, and as to the business interests of Acrisure that it aims to protect.  *See also Acrisure, LLC v. Hudak*, No. 1:22-CV-17, 2023 WL 4512620, at *10 (W.D. Mich. July 13, 2023) (Jarbou, C.J.) (likewise determining that Acrisure's restrictive covenants are "reasonable in scope, duration, and as to the business interests of Acrisure which they aimed to protect").  Accordingly, the Court is convinced of Acrisure's strong likelihood of success on the merits of its breach-of-contract claims in Counts I and IV.

2.    Irreparable Injury Without an Injunction

Turning to the second factor, Acrisure argued in briefing and during oral argument that a finding of irreparable harm is supported by (a) the express language of the agreements and (b) Sixth Circuit precedent on the nature of the loss of customer good will (ECF No. 38 at PageID.546–551).

In response, Papazyan argued in briefing and during oral argument that Acrisure's allegations of irreparable injury are speculative and based, in large part, "on information and

belief," and that any harm is quantifiable, as evidenced by the sale of GIA (ECF No. 51 at PageID.665–668).

The second factor also weighs in favor of Acrisure.

The irreparable-injury factor is "indispensable." *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019).  If a plaintiff is not facing imminent and irreparable injury, then there is no need for a court to grant relief at the start of a lawsuit, as opposed to at the end of the lawsuit.  *Id.* A plaintiff seeking injunctive relief must show that irreparable injury is not merely "possible" but that it is "likely," absent an injunction.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  The Sixth Circuit has held that a party's injury is "irreparable" when its losses are "unrecoverable," *Commonwealth v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023); the injury is "not fully compensable by money damages," *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't.*, 305 F.3d 566, 578 (6th Cir. 2002); and when the nature of the loss would make damages "difficult to calculate," such as "competitive losses and losses of customer goodwill," *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

As a threshold matter, the language in the parties' agreements does not dictate resolution of this prong (or this motion).  The parties agreed that "the duration, activities restricted by and geographic scope of the Restrictive Covenants"—including the EA Non-Competition Covenant, EA Employee Non-Solicitation Covenant, and EA Business Non-Solicitation Covenants—"are reasonable and are necessary to protect the business and goodwill of [Acrisure] and that a breach of these restrictions will cause irreparable harm to [Acrisure]" (EA § 14(a)).  However, as the Sixth Circuit has held, "[n]o contract can dictate to a federal district court a decision whether to grant injunctive relief. That decision instead depends upon an exercise of the court's discretion, as

bounded by the relevant factors from the caselaw." *ComForCare Franchise Sys., LLC v. ComForCare Hillsboro McMinnville Corp.*, 815 F. App'x 80, 81 (6th Cir. 2020).

The current record more than amply supports a showing of irreparable harm to Acrisure, i.e., harm that cannot wait for an award of injunctive relief at the end of this case.  There is no serious dispute that the role Papazyan was offered by Howden is the same job he previously performed for Acrisure.  Papazyan testified that his negotiations at Howden included discussions about him bringing his Acrisure customers to Howden (Papazyan Dep. at 28).  Indeed, Papazyan's compensation for the first three years is partially dependent on how many customers he solicits (*id.* at 106).

The Sixth Circuit has repeatedly held that "the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer." *FirstEnergy Sols. Corp. v. Flerick*, 521 F. App'x 521, 529 (6th Cir. 2013); *see also Basicomputer*, 973 F.2d at 512 (6th Cir. 1992) ("[T]he loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer"); *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 852 (6th Cir. 2017) (same).

> Here, as Acrisure's Chief of Staff declared:
>
> Customer relationships in the insurance brokerage marketplace are cultivated over years and, once established, often last for extended periods. The lifetime value of each individual customer relationship is difficult to quantify. For example, there is no way of predicting what policies (and thus commissions to Acrisure) customers may choose in the future, whether customers may add additional policies (and thus create additional revenue streams through commissions to Acrisure), and what potential referrals the transferring customers might have made of potential new customers to Acrisure. Once a customer is lost, the goodwill associated with that customer is lost, meaning that after years of dedication to serving those customers, Acrisure will lose out on the intangible benefits Acrisure worked so hard to build.

(Schutt Decl. ¶¶ 40–41).    The conversations both preceding and following entry of the Court's temporary restraining order between Papazyan and his customers illustrate the value of these personal relationships.

In short, the Court determines that the irreparable-injury factor weighs in favor of Acrisure.

3.    Balancing of Equities

On the third factor, Acrisure argues that awarding injunctive relief will merely hold Papazyan to his contractual promises under the Agreements, which were negotiated with the aid of legal counsel and for which he was extremely well-compensated (ECF No. 38 at PageID.551). Acrisure opines that discovery will reveal that Papazyan is being indemnified or has otherwise secured protections from his new employer that will further mitigate against any arguable prejudice to him (*id.*).    In response, Papazyan reiterates that whatever revenue Acrisure may ultimately demonstrate was lost to his departure is compensable whereas its requested injunction will "end" his "professional activities" and will constitute "career extinction" (ECF No. 51 at PageID.668–669).

This Court previously determined that "issuing a temporary restraining order would not substantially harm Papazyan more than failing to issue a temporary restraining order would harm [Acrisure]" (TRO, ECF No. 23 at PageID.359).    The Sixth Circuit and district courts within this circuit have observed that to the extent a former employee is harmed through her breach of a non-competition agreement, she has "brought this harm upon herself. She was fully aware of the provisions of her contract," and by "breaking her agreement, [she] willfully incurred the risk that [her former employer] might enforce the terms of the non-competition agreement." *Viking Grp., Inc. v. Wallace*, No. 1:25-CV-1270, 2025 WL 4071199, at *14 (W.D. Mich. Nov. 20, 2025)

22

(Beckering, J.) (collecting cases).  The Court is persuaded that the balance-of-equities factor continues to weigh in Acrisure's favor.

4.    Public Interest

Last, Acrisure opines that the public interest lies in fair competition and enforcing written contracts (ECF No. 38 at PageID.552), and Papazyan asserts that the public interest disfavors "void" covenants (ECF No. 51 at PageID.669–670).

This last factor weighs in favor of Acrisure.  For the reasons previously stated, Acrisure is likely to prevail on the merits of its claims in Counts I and IV, and the Sixth Circuit has expressly held that "[e]nforcement of contractual duties is in the public interest." *Certified Restoration*, 511 F.3d at 551 (holding that issuing the requested preliminary injunction "would hold Defendants to the terms of the bargain they entered into through the franchise agreement").

In sum, the Court determines that the factors, on balance, weigh in favor of issuing a preliminary injunction directing Papazyan to comply with his obligations under the Non-Competition Covenants, as defined in the agreements, pending resolution of this case or further Order of the Court.  Such relief "simply preserve[s] the status quo" for which the parties contracted. *Towerco*, 110 F.4th 879–80.

**D.  Security**

Federal Rule of Civil Procedure 65(d) states that "no restraining order of preliminary injunction shall issue except upon the giving of security by the applicant ...." FED. R. CIV. P. 65(d). "While ... the language of Rule 65(d) appears to be mandatory, and many circuits have so interpreted it, the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security." *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995).  Papazyan requests that the Court impose a "substantial" bond, opining that

23

equity does not favor waiving "the only financial protection available to the party who has become unemployed because of an order that should not have been entered" (ECF No. 51 at PageID.673). However, Papazyn makes no allegation that Acrisure poses a collection risk.  The Court therefore continues to waive the security requirement of Rule 65(d).

### III.  CONCLUSION

Accordingly, for the reasons stated on the record on May 26, 2026 and herein,

**IT IS HEREBY ORDERED**, in the Court's discretion, that Plaintiff Acrisure's  Motion for a Preliminary Injunction (ECF No. 37) is GRANTED.  A Preliminary Injunction consistent with this Opinion and Order will separately issue.

**IT IS FURTHER ORDERED** that Defendant Papazyan's motion to dismiss (ECF No. 19) is DENIED AS MOOT.

**IT IS FURTHER ORDERED** that Defendant Papazyan's motion seeking clarification of the TRO (ECF No. 124) is DENIED AS MOOT.

**IT IS FURTHER ORDERED** that Howden's Motion to Quash or Modify Subpoena (ECF No. 87) as well as its related Motion for Leave to File a Reply Brief (ECF No. 112) and the associated proposed orders (ECF Nos. 90 & 115) are DENIED AS MOOT.

Dated: May 26, 2026

 /s/ Jane M. Beckering
JANE M. BECKERING
United States District Judge